8 Kan. App. 2d 602 (1983)
663 P.2d 675
IN THE INTEREST OF TANYA REED and RONALD JUDSON, Minor Children Under the Age of 18, to-wit: 6 and 4 Years of Age, Respectively.
JANET JUDSON, Appellant,
v.
GERALD W. HART, Assistant County Attorney, and ROBERT L. FARMER, Guardian Ad Litem, Appellees.
No. 54,657
Court of Appeals of Kansas.
Opinion filed May 26, 1983.
Patrick S. Bishop, of Short and Gentry, of Fort Scott, for appellant.
Gerald W. Hart, and Robert L. Farmer, pro se, appellees.
Before FOTH, C.J., ABBOTT and MEYER, JJ.
MEYER, J.:
This case involves the severance of parental rights of respondent-appellant Janet Judson (hereinafter respondent) in and to her minor children Tanya Reed and Ronald Judson, ages 7 and 5 today, respectively. (The children were ages 6 and 4 at the time the court severed parental rights.) Respondent, the natural *603 mother, appeals; the natural father, whose parental rights were also severed, does not.
This case was commenced on April 17, 1981, when petitions were filed in the District Court of Bourbon County, Kansas, alleging the above-mentioned minor children to be deprived. An attorney was appointed to represent respondent. A guardian ad litem had previously been appointed to represent the interests of the children.
The first hearing was held on May 28, 1981. At the conclusion thereof, District Magistrate Judge Samuel I. Mason found the children to be deprived, as that term is defined in K.S.A. 38-802(g). The court's journal entry of that date made the children wards of the court and placed them in the custody of the Kansas Department of Social and Rehabilitation Services. The court further ordered respondent to provide a proper home environment for the children, including employment for herself and proper parental and baby-sitting care for the children, within 180 days. A home study of respondent's progress towards these ends was called for, to be conducted by the Oklahoma Department of Social and Rehabilitation Services. Finally, the court ordered that failure of respondent to comply with the conditions imposed upon her would result in the filing of petitions for severance of her parental rights.
A second hearing was held on December 8, 1981, at which time the court reviewed the matter. The court then found that respondent had failed to comply with the conditions of its previous order, and it directed the State to file severance petitions. Such petitions were filed, relative to each child, on December 29, 1981.
The matter came on for hearing again on January 26, 1982, this time before Associate District Judge Leighton A. Fossey. By journal entry of that date, the court continued custody with the Kansas Department of SRS, but directed study of the feasibility of transferring foster care to Oklahoma, to which state respondent had relocated. The court directed respondent to remain in contact with the children at least once a week. The court also ordered additional reports from both the Kansas and Oklahoma Departments of SRS. The case was continued until May 4, 1982.
The final proceeding in this matter was a hearing held on May 28, 1982, before Judge Fossey. By journal entry of that date the *604 court found that respondent had failed to comply with the conditions of the order dated May 28, 1981. The court also found that respondent had failed to contact the children as often as possible as well as to provide monetary support. Additionally, the court found that respondent showed little, if any, interest in the children, and further, that she had failed to establish, and in fact appeared incapable of establishing, a suitable home environment for them. Lastly, the court found that the children had benefited from their period of foster care. On the basis of these findings, the court severed respondent's parental rights in and to the children.
As her first issue, respondent contends the State failed to sustain the heavy burden of proof placed upon it in a severance proceeding.
Under the Kansas juvenile code, a person's parental rights may only be severed upon two specific findings by a court of competent jurisdiction: namely, that the child is "deprived" (K.S.A. 38-802[g]), and that the parent is "unfit" (K.S.A. 38-824[c]). In re Atwood, 2 Kan. App.2d 680, 587 P.2d 1 (1978). It is equally true that proof of unfitness must be established by clear and convincing evidence. In re Armentrout, 207 Kan. 366, Syl. ¶ 2, 485 P.2d 183 (1971).
By its order of May 28, 1981, the court found the children herein to be "deprived." Respondent has never appealed that point, so such finding is conclusive upon this court.
By its order of May 28, 1982, the court found respondent to be "unfit"; she does challenge this finding. That term has been defined by the courts as follows:
"The word `unfit' means in general, unsuitable, incompetent or not adapted for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. In re Armentrout, 207 Kan. 366, Syl. ¶ 3, 485 P.2d 183 (1971). So, also, incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from any other defects. In re Vallimont, 182 Kan. at 340.
"Inherent mental and emotional incapacity to perform parental obligations can constitute such breach of parental duty as to make the parents unfit to be entrusted with custody of their child. See K.S.A. 1977 Supp. 38-824(c); In re Johnson, 214 Kan. 780, 522 P.2d 330 (1974); In re Bachelor, 211 Kan. at 883." In re Penn, 2 Kan. App.2d 623, 625, 585 P.2d 1072 (1978).
And in In re Vallimont, 182 Kan. 334, 339, 321 P.2d 190 (1958), the court noted the similarity between the finding of a child to be *605 "deprived" (then statutorily known as "dependent and neglected"), and that of a parent to be "unfit."
"We think it entirely plain that misconduct on the part of parents which would empower a juvenile court to take jurisdiction of a child as `dependent and neglected' is likewise such breach of parental duty as to make the parents unfit to be entrusted with the custody and rearing of their child in a custody award matter."
And see also In re Bachelor, 211 Kan. 879, Syl. ¶¶ 1, 2, 508 P.2d 862 (1973).
On appellate review, the findings of the lower court, that a child is "deprived" and a parent "unfit," will not be disturbed if there is substantial competent evidence to support them. In re Hamlett, 2 Kan. App.2d 642, 644, 586 P.2d 277 (1978). And, when reviewing the evidence, the appellate court considers it in the light most favorable to the party prevailing below. In re Hambelton, 2 Kan. App.2d 68, 71, 574 P.2d 982, rev. denied 225 Kan. 844 (1978).
In the case at bar, the children were found to be "deprived" on May 28, 1981. Inherent in such a finding is the conclusion that respondent was at that time failing to provide a suitable home environment for the children. In conjunction with this finding, the court ordered her to alter her lifestyle so as to provide such an environment, or face severance of her parental rights as the result of her failure to do so.
At the hearing held on December 8, 1982, the court had before it a home study conducted by the Oklahoma Department of SRS, dated November 17, 1981. The gist of this report was that respondent did not exhibit sufficient stability to warrant the return of the children to her custody. Based on this report, the court ordered the filing of severance petitions.
When the matter came on for the final hearing, on May 28, 1982, the court was presented with a follow-up report from the Oklahoma Department of SRS. The gist of this report dated May 3, 1982, was that respondent's lifestyle and attitudes, far from improving, had in fact degenerated. It was stated that her job was in jeopardy and that she failed to keep adequate contact with either the children or the Oklahoma Department of SRS. On the basis of this report, her parental rights were severed.
The original finding that the children were "deprived" has never been contested, so it is res judicata as to the conditions *606 existing on May 28, 1981. The later findings (i.e., December 8, 1981, and May 28, 1982) that these conditions showed no improvement, and in fact appeared to have worsened, were supported by the objectively prepared reports above-mentioned and -summarized. It is arguable that these reports, if properly admitted, would be adequate support for such later findings, and thus, would supply a sufficient ground upon which to base the severance of respondent's parental rights. However, because of our holding herein, we need not decide whether such reports would or would not constitute sufficient evidence.
At trial respondent questioned the admissibility of the home study reports compiled by the Oklahoma Department of SRS, contending that they were hearsay not subject to any recognized exception. The State responded that the reports were authenticated copies of public records, and moved for their admission pursuant to K.S.A. 60-465. The State also noted that these reports had been prepared and submitted upon order of the court. The court overruled respondent's objection and admitted the copies of the reports.
The admission of the reports over respondent's objections was error. Those reports were, in our opinion, clearly hearsay. They did not qualify for admission under K.S.A. 1982 Supp. 60-460(m) since no foundation was laid for their admission as business records. Nor were they admissible under K.S.A. 60-465 because there was no evidence introduced to warrant a finding that same complied with any of the requirements for admission as authenticated copies of official records stated in K.S.A. 60-465. See In re Johnson, 214 Kan. 780, Syl. ¶ 1, 522 P.2d 330 (1974). Cf. In re Harris, 218 Kan. 625, Syl. ¶¶ 1, 2, 544 P.2d 1403 (1976).
Respondent's argument that the evidence taken at, and the orders issued after, previous hearings were not competent proof of her parental fitness as of May 28, 1982, is well put. Such evidence and orders were competent only for the court's consideration on the issue of what her state of fitness was at the time same were heard and issued; such prior findings were conclusive only as to prior conditions. The final home study report, having been prepared near the time of the final hearing, might have been competent proof that those conditions had not improved as of the date of that hearing. However, since we have held that the Oklahoma report was improperly admitted, and *607 since there was no other current evidence admitted for the court's consideration, it follows there was no substantial, competent evidence to support the severance of respondent's parental rights.
Respondent's second issue is a claim that she was denied due process of law in the proceedings of May 28, 1982. Her attack is three-pronged. First, she complains of an inability to confront her accusers. Second, she claims that the burden of proof of her own "fitness" as a parent was erroneously cast upon her. Third, she argues that the court erred in denying her a chance to present evidence in her own behalf. The first prong is essentially a restatement of her hearsay argument. As we state above, that argument has considerable merit. Likewise, her other two points under this issue have merit.
At the outset of the hearing, the court noted that it had before it the most recent home study report, prepared on May 3, 1982, by the Oklahoma Department of SRS. The judge expressed concern that the report showed little improvement in respondent's lifestyle. He also noted that all earlier reports, and the findings made following previous hearings, likewise indicated little or no progress on respondent's part. The court then asked counsel for respondent if he wished to present any evidence to rebut the obvious inference to be drawn from the most recent report, that respondent had failed to comply with the court's previous orders regarding a change in her home environment.
Respondent's counsel stated that it was the State's burden to prove "unfitness," and that in his opinion the State had failed to offer any such proof. He again objected to the admission of the Oklahoma report, on the ground of hearsay. He then declined to put on any testimony until such time as the State presented some admissible evidence of its own.
The court asked the State to answer respondent's objections. The State did so, expressing its opinion that the reports were admissible and that they clearly showed respondent's noncompliance with the previous orders of the court. The court then asked for comments from the guardian ad litem, who expressed agreement with the position taken by the State.
The court ruled to admit the reports, and thereupon found respondent to be "unfit," based on her continued failure to abide by the court's orders to provide a stable home environment for *608 the children. Respondent's counsel then asked for an opportunity to rebut the information contained in the latest report; he also reiterated his hearsay objection to that report and his argument that the State had failed to sustain its burden of proof. He then stated again that he wished to reserve his right to place respondent on the stand.
The court stated that its order of severance would stand. Counsel for respondent objected to the disallowance of his client's testimony, stating that he had reserved that right. The court stated that it assumed respondent had earlier waived that right; counsel for respondent replied that he had not. The court repeated that its order of severance would stand, and the hearing was adjourned.
Analyzing the preceding summary, we offer the following observations. The hearing was conducted rather informally. It would seem that respondent's assertion that the State had not provided any proof of "unfitness" and the refusal to present any rebuttal evidence based on that assertion, was in the nature of a motion to dismiss, based on insufficient evidence, made at the close of the State's case. The court effectively ruled against respondent on this motion, and then refused her request to present rebuttal evidence on the ground that the motion to dismiss had been made.
A defendant does not waive his right to present evidence by merely interposing a motion to dismiss at the end of the plaintiff's case-in-chief. Thus, it was error to refuse respondent's request to testify; this was a denial of her right to due process of law. It was likewise error for the court to cast upon respondent the duty to prove her fitness. This the court effectively did when it erroneously admitted the final report, for without that report in evidence the only proof of respondent's unfitness would be earlier reports and orders. As stated previously, the earlier findings were conclusive of the conditions at those earlier times, but they would not relieve the State of the burden of proving that such earlier conditions still existed on May 28, 1982. For all the preceding reasons, this case must be reversed and remanded.
To summarize, we conclude it was error for the trial court to admit the Oklahoma reports into evidence over respondent's objection. This error was compounded by the fact that the court thus erroneously cast the burden of proving fitness upon the *609 respondent. The court then erred again when it refused to permit respondent to testify; this was a patent denial of her right to due process of law. Therefore, the trial court's order of severance is reversed as to respondent, and this case is remanded to the trial court for appropriate action. The original ruling of the trial court, that being the one of May 28, 1981, which found the children to be deprived, is, of course, not affected by this opinion.
Reversed and remanded.