(738 P.2d 98)

No. 59,228

In the Interest of K.G.O., K.J.O., E.A.S., and H.E.S., Minor Children Under 18 Years of Age.

—

Opinion filed February 26, 1987.

*Donald C. Astle,* of Wichita, for appellant R.S., natural father of E.A.S. and H.E.S.

*John D. Clark,* of Wichita, for appellee Kansas Department of Social and Rehabilitation Services.

*Steve Mosley,* of Wichita, guardian ad litem.

Before PARKS, P.J., BRAZIL and DAVIS, JJ.

BRAZIL, J.: The father of the youngest two of the four children involved in this case appeals the trial court's decision to terminate his parental rights.

On May 2, 1984, four girls, ages 9, 5, 2, and 7 months, were found alone at a motel by Wichita police. At a July 3 hearing, the mother of the four and the father of the youngest two stipulated they had left the children alone, and the court found the girls to be children in need of care. The court ordered the father to submit to a psychological evaluation. At an October 11 hearing, after receiving one evaluation done by Dr. Bruce Nystrom, which is not in the record on appeal, the court ordered the father "to commence and continue to engage in an active individual

psychotherapy program until said program is deemed no longer necessary by the therapist."

The father began a therapy program with psychologist Steve Reynolds on January 24, 1985. He had nine sessions with Reynolds, the last occurring on May 2, 1985.

In July 1985, SRS moved to terminate both parents' rights, alleging neither had complied with various reintegration plans, both had failed to maintain regular visitation with their children, and each had failed to progress in therapy—the father because he was so rigid and unwilling to change that the therapist, Reynolds, had discharged him from therapy. The court held hearings on this motion on July 31, August 1, September 26, and October 7, all in 1985.

At the hearing on July 31, Reynolds testified. The father objected to the following question and answer on the ground of psychologist-patient privilege:

"Q. . . . Why did [the father] come to the Clinic for treatment?
"A. [The father] had requested treatment as per direction of SRS and the Court is my understanding of it."

The court overruled this objection. Reynolds then testified without objection that the father suffered from a paranoid personality disorder, with symptoms such as inability to trust people at times, suspiciousness, and "inappropriateness of affect," and that the father particularly used intimidation to distance people from himself and showed hypersensitive suspiciousness. The father objected again a short time later. Reynolds was asked why he recommended the therapy with the father be discontinued, and the following occurred:

"A. Well, the original goals of therapy I had in my mind was [sic], of course, to assess whether or not [the father] wanted to change. And there were a couple of targets defined for the direction of therapy: One of them was getting the issue of intimidation out in the open with [him], which we had done and had some lengthy discussion about; and then make some kind of decision as to whether or not he wanted to change that kind of behavior with other people. That was discussed out in the open and he indicated to me that he didn't see that he needed to change that.

"We also discussed how that kind of behavior may affect others, and again, as he indicated to me —

"MR. ASTLE: Your Honor, I object. Again, this is calling for confidential communications under the psychologist/client privileges. I'm asserting that privilege for my client.

. . . .
"THE COURT: K.S.A. 38-1514, subsection (c), sub (1), provides there is, 'No confidential relationship of physician and patient, psychologist and client or social worker and client shall arise from an examination or evaluation ordered by the court.'
It does not go on and deal directly with ongoing therapeutic programs; however, I do not find that the client's communications as to whether or not he wishes to effect any change through therapy or not effect any change is a confidential communication. I will, therefore, overrule the objection."

The father later testified that he was willing to engage in a psychotherapy program but not with Reynolds, because he did not trust Reynolds or was cautious about him.

By journal entry filed on January 31, 1986, the court made the following pertinent findings:

"4. the father of [the two youngest girls] suffers from a chronic paranoid personality disorder causing him to be very distrustful and to attempt to control others by intimidation, a disorder which would require long term psychotherapy he has declined to accept;
. . . .
"7. the fathers of each of these children are unfit by reason of conduct or condition which renders that parent unable to care properly for his child and the conduct or condition is unlikely to change in the foreseeable future."

The court then terminated the father's parental rights.

The father raises two issues on appeal. We will consider his second issue first.

He argues that the trial court erred when it allowed the testimony of Steve Reynolds in violation of the psychologist-patient privilege. He has raised a possible conflict between two statutes without quoting either one.

K.S.A. 1986 Supp. 74-5323 provides in part: "The confidential relations and communications between a licensed psychologist and the psychologist's client are placed on the same basis as provided by law for those between an attorney and the attorney's client." K.S.A. 38-1514 provides in pertinent part:

"(b) . . . (1) . . . During proceedings under this code, the court may order an examination, evaluation and report of the physical, mental or emotional status or needs of a parent . . . being considered as one to whom the court may grant custody. . . .
. . . .
"(c). . . (1) . . . No confidential relationship of physician and patient, psychologist and client or social worker and client shall arise from an examination or evaluation ordered by the court."

Thus, two preliminary questions arise from the father's claim: (1) Was his relationship with Reynolds covered by the privilege granted by K.S.A. 1986 Supp. 74-5323? (2) If so, was his relationship with Reynolds within the exception to 74-5323 created by K.S.A. 38-1514(c)?

K.S.A. 60-426 sets out the lawyer-client privilege and provides some guidance on the first question. With substitutions to follow K.S.A. 1986 Supp. 74-5323, it states in part:

"(a) . . . communications found by the judge to have been between [psychologist] and his or her client in the course of that relationship *and in professional confidence,* are privileged [in certain situations]. . . .

. . . .

"(c) . . . As used in this section (1) 'client' means a person . . . that . . . consults a [psychologist] *for the purpose of* retaining the [psychologist] or *securing [psychological] service or advice* from the [psychologist] in his or her professional capacity . . . ." (Emphasis added.)

Since the father went to Reynolds by order of the court, there must be at least some doubt whether he might reasonably have felt that their communications were conducted "in professional confidence." The court had found his children to be in need of care and was charged under K.S.A. 38-1583(a) with determining whether the father was unfit and, if so, was unlikely to improve so as to be a fit parent in the foreseeable future. The father should have known the court would have to learn of his progress in therapy with Reynolds in order to make that determination. Without Reynolds' testimony, it is difficult to see how the court could "give primary consideration to the physical, mental or emotional condition and needs of the child[ren]" in making that decision. K.S.A. 38-1583(e). As a secondary consideration, it might also be asked whether the father's purpose in consulting Reynolds was "securing [psychological] service or advice." K.S.A. 60-426(c). This would, of course, be an underlying purpose, but his main purpose would presumably be to fulfill the court's order in hopes of retaining his parental rights.

The father relies largely on the assertion that the ongoing psychotherapy program here was not "an examination or evaluation ordered by the court" under K.S.A. 38-1514(c). He is simply applying the usual understanding of the words "examination"

and "evaluation," however, and ignoring the context of their use in the Code for Care of Children, K.S.A. 38-1501 *et seq.* As indicated above, the court here was obligated to determine whether the father was "unfit by reason of . . . condition" *and* whether the "condition is unlikely to change in the foreseeable future." K.S.A. 38-1583(a). While one purpose of the court's order for therapy was to attempt to enable the father to resume his parental responsibilities, another was necessarily to help the court determine the likely future of the father's condition. Thus, the ongoing therapy program was not only intended to treat, but also to "evaluate" the father's condition. We conclude that any privilege the father might have otherwise been able to claim was rendered inapplicable in this situation by the exception stated in K.S.A. 38-1514(c).

We note that the question actually answered by the trial court was: Assuming the father could claim it, were these particular communications within the privilege? The father's first claim of privilege was made when Reynolds testified the father came to him at the direction of SRS and the court. This information was not confidential since the court already knew it. He next objected when Reynolds attempted to explain why the father had discontinued therapy. The court did not conclude K.S.A. 38-1514(c) controlled but instead relied on the following reasoning: "I do not find that the client's communications as to whether or not he wishes to effect any change through therapy or not effect any change is a confidential communication." Although it is somewhat difficult to equate the attorney-client and psychologist-patient relationship, that is what K.S.A. 1986 Supp. 74-5323 requires. The father's statement to Reynolds that he did not feel that he needed to change appears similar to a client's statement to an attorney that his or her services are no longer required, *i.e.,* that the attorney is fired. The fact that the attorney-client relationship was thus ended could not be kept confidential, or else people who were aware the relationship had existed might attempt to deal with the attorney as the representative of the client and the attorney would not be able to correct their misunderstanding. Similarly then, Reynolds must be allowed to inform the court that the father had ended their relationship. If so, the

trial court was correct in deciding the communication was not confidential.

Finally, the father contends there was insufficient evidence of a clear and convincing nature to find that he was unfit and unlikely to change in the foreseeable future. We disagree.

K.S.A. 38-1583 provides in relevant part:

"(a) When the child has been adjudicated to be a child in need of care, the court may terminate parental rights when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future.

"(b) In making a determination hereunder the court shall consider, but is not limited to, the following, if applicable:

"(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental and emotional needs of the child;

. . . .

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child.

. . . .

"(e) The existence of any one of the above standing alone may, but does not necessarily, establish grounds for termination of parental rights. The determination shall be based on an evaluation of all factors which are applicable. In considering any of the above factors for terminating the rights of a parent, the court shall give primary consideration to the physical, mental or emotional condition and needs of the child.

"Unfit" has been defined, under the predecessor to this statute, as "unsuitable, incompetent or not adapted for a particular use or service." *In re Armentrout*, 207 Kan. 366, Syl. ¶ 3, 485 P.2d 183 (1971).

"On appellate review, the findings of the lower court, that a child is 'deprived' and a parent 'unfit,' will not be disturbed if there is substantial competent evidence to support them. *In re Hamlett*, 2 Kan. App. 2d 642, 644, 586 P.2d 277 (1978). And, when reviewing the evidence, the appellate court considers it in the light most favorable to the party prevailing below. *In re Hambelton*, 2 Kan. App. 2d 68, 71, 574 P.2d 982, *rev. denied* 225 Kan. 844 (1978)." *In re Reed*, 8 Kan. App. 2d 602, 605, 663 P.2d 675 (1983).

"[A] person's parental rights may only be severed upon two specific findings by a court of competent jurisdiction: namely, that the child is [a child in need of care] [citation omitted], and that the parent is 'unfit' [citations omitted]. It is equally true that proof of unfitness must be established by clear and convincing evidence." *In re Reed*, 8 Kan. App. 2d at 604.

See K.S.A. 38-1583(a); *In re Armentrout*, 207 Kan. 366, Syl. ¶ 2; *In re Atwood*, 2 Kan. App. 2d 680, 587 P.2d 1 (1978).

The father's argument here is completely misdirected. He complains that SRS failed to carry out its obligations to him under the reintegration plans to which they agreed. While his failure to comply with the plans is one factor the court may consider in deciding whether to terminate his parental rights (K.S.A. 38-1583[c][3]), the court made only one finding which could have formed the basis for its ultimate finding that he was an unfit parent, namely that he "suffer[ed] from a chronic paranoid personality disorder causing him to be very distrustful and to attempt to control others by intimidation, a disorder which would require long term psychotherapy he has declined to accept." This finding appears to fall within K.S.A. 38-1583(b)(1) and (8), quoted above, and forms a permissible basis for the court's decision so long as this finding is properly supported by the evidence.

Reynolds testified the father suffered from such a mental problem and had refused to participate in therapy which would help him resolve the problem. This testimony, once accepted by the trial court as factfinder, is binding on our court. "An appellate court should not weigh the evidence or pass upon the credibility of the witnesses." *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, 464, 639 P.2d 29 (1982).

Affirmed.