No. 63,382

IN THE INTEREST OF S.M.Q., a Minor Child under Eighteen Years of Age.

(796 P.2d 543)

Opinion filed July 19, 1990.

*Gerald J. Domitrovic*, of Wichita, argued the cause and was on the brief for appellant natural mother.

*E. Jolene Rooney*, of Social and Rehabilitation Services, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: K.F.H., the natural mother of S.M.Q., a young girl born on December 19, 1984, appealed the termination of her parental rights to S.M.Q. pursuant to K.S.A. 38-1583. In an unpublished opinion, a majority of the Court of Appeals panel reversed the Sedgwick County District Court's termination of the parental rights to S.M.Q. by finding the termination was not supported by "substantial evidence of a clear and convincing nature." The Secretary of Social and Rehabilitation Services (SRS) filed a petition for review, claiming that the Court of Appeals applied the wrong standard of review. We accepted the petition for review.

The Court of Appeals determined there was sufficient evidence to find the child was in need of care and affirmed the trial court's

placement of S.M.Q. in the custody of SRS. But as to the termination of parental rights of the mother, the Court of Appeals stated it "must search the record in order to determine whether the findings of the trial court are supported by substantial competent evidence of a clear and convincing nature as to parental unfitness." The Court of Appeals found that while there was some evidence to sustain the trial court's findings it was not of a clear and convincing nature. Specifically, it held the expert testimony did not show that the mother was mentally disabled or unfit since her personality disorder had not made her a person in need of care or interfered with her ability to work or maintain a home. It went on to review the psychologist's testimony and concluded there was no evidence that the mother's personality disorder would render her unable in the future to meet her child's needs. Finally, the court held that instances of abusive contact were not sufficient to justify the extreme penalty of severance.

In his dissent, Judge Gernon criticized the majority for reweighing the evidence. He stated the scope of review for the Court of Appeals is not to find "whether there was sufficient evidence of a clear and convincing nature to support the trial court's findings, but whether there is substantial competent evidence to support such findings." The controlling issue here is to discern the appropriate standard of appellate review of a trial court's severance of parental rights.

Termination of parental rights is a triangle which balances the State's interest as *parens patriae* along with the parents' rights to preserve the family relationship and the child's best interests. Although the numbers may be higher due to underreporting, in Kansas alone during 1989 there were 2,067 confirmed child abuse reports, 129 confirmed hospitalizations due to child abuse, and 8 confirmed child abuse deaths. Report from the Kansas Child Abuse Prevention Council (Spring 1990).

The difficult question of termination turns on two questions: (1) determining whether the child can be returned to the parent within a reasonable time, and (2) determining whether the termination of parental rights is in the child's best interests. 1 Elrod, Kansas Family Law Handbook § 5.04, p. 5-31 (rev. ed. 1990). The purpose of the severance procedure is to provide stability in the life of a child who must be removed from the home of a

parent; to acknowledge that time perception of a child differs from that of an adult; and to make the ongoing physical, mental, and emotional needs of the child the decisive consideration in proceeding under the statute. K.S.A. 1989 Supp. 38-1584.

The United States Supreme Court in *Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), requires the State's allegations to be proven by clear and convincing evidence in order to meet the due process requirement of the Fourteenth Amendment before a parent's rights are terminated. Even before *Santosky,* Kansas required proof by clear and convincing evidence in termination proceedings. *In re Kerns,* 225 Kan. 746, 594 P.2d 187 (1979); *In re Nelson,* 216 Kan. 271, 531 P.2d 48 (1975); *In re Stafford,* 193 Kan. 120, 392 P.2d 140 (1964).

K.S.A. 38-1583(a) allows the severance of parental rights when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future. The term "unfit" is defined to include "[i]nherent mental and emotional incapacity to perform parental obligations [which] can constitute such breach of parental duty as to make the parents unfit to be entrusted with custody of their child." *In re Johnson,* 214 Kan. 780, 522 P.2d 330 (1974); *In re Bachelor,* 211 Kan. 879, 508 P.2d 862 (1973); *In re Penn,* 2 Kan. App. 2d 623, 625, 585 P.2d 1072 (1978).

Clear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance but not beyond a reasonable doubt. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence. 30 Am. Jur. 2d, Evidence § 1167.

The same standard of appellate review that is applicable for termination of parental rights in an adoption proceeding is applicable in this case. To terminate parental rights in an adoption proceeding, the duty of an appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the trial court's findings. An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. It must review the evidence in the light most favorable to the party prevailing below. *In re Adoption of B.C.S.*, 245 Kan. 182, 186, 777 P.2d 776 (1989). See *In re J.G.*, 12 Kan. App. 2d 44, 734 P.2d 1195, *rev. denied* 241 Kan. 838 (1987). With these rules in mind, we search the record to determine whether there is substantial competent evidence to support the district court's decision.

On April 21, 1986, S.M.Q. was admitted to a hospital with extreme burns on her buttocks. An SRS social worker, Debra Cochran, testified the treating physician had indicated that someone had to have applied pressure on S.M.Q. in order to keep the child in a position long enough for the flesh to be burnt so deeply by a floor furnace. Due to the nature of the injury to the child and the treating physician's finding, the hospital asked SRS to investigate. Cochran talked with S.M.Q.'s mother, who first denied burning the child and then reluctantly admitted that she might have done it. From conversations with the physician, the mother, and babysitters, Cochran determined the child had been physically abused and that the abuse had been inflicted ·by the mother.

On April 22, 1986, the mother voluntarily admitted herself into psychiatric care. The mother told of slapping S.M.Q. when she was six months old and having hit her with a pop bottle at age seven months. Concerns about the mother's parenting ability resulted in the mother allowing SRS to arrange for alternate care of the child with relatives. The child lived with relatives from April 1986 until they tired of taking care of the child in approximately March/May 1987. The child was returned to the mother without anyone contacting SRS or obtaining the required approval from the mother's therapist for the child to return home.

After approximately twelve reports of possible child abuse, SRS again became involved in September 1987 and established a two-month Social Services Agreement on October 15, 1987. Based on the SRS recommendation, the child was enrolled in a ten-month program at a Parent and Child Resource Center, which provides a preschool program for children and a weekly parenting skills class for parents. The mother allowed S.M.Q. to attend the preschool program for only four months. Although the social worker did not find bruises on the child during her weekly visits, the preschool teacher wrote a letter listing incidents of the child reporting being slapped by her mother. The preschool teacher observed bruises on the child's buttocks and marks under her nose, and that the child was not appropriately dressed for the weather and not being fed when she was ill. The mother only admitted inflicting the marks under the child's nose, which were the result of her throwing hard-soled shoes at the child.

During the period covered by the Social Services Agreement the mother was unemployed and a single parent living on ADC. Though cooperative during the first month of the agreement, the mother found reasons why the counseling program, job readiness program, parenting classes, and a family support worker were not appropriate for her. On October 15, 1987, while discussing the Social Services Agreement, the mother told the social worker, "I am a child abuser and I need help." In December, the social worker, still concerned and in an effort to continue the family services, requested that the mother extend the Social Services Agreement an additional two months. The mother refused.

On January 27, 1988, a child in need of care petition was filed. On April 18, 1988, District Judge Karl W. Friedel found S.M.Q. a child in need of care and placed her in temporary custody of the State Secretary of SRS. The judge ordered the mother to have a psychological evaluation and required visitation with the child to be at the discretion of SRS.

A psychologist, Dr. Nancy Ross Milner, began her evaluation of the child on May 25, 1988. The evaluation concluded on July 27, 1988, based on five visits followed by a progress report on October 26, 1988. Finding the child was already mentally damaged, the doctor recommended the stable environment of a permanent home to prevent mental health problems throughout

S.M.Q.'s life. Indications of prior sexual abuse were discovered when a foster parent found the child masturbating. When the mother was asked about possible sexual abuse, she expressed concern that either her husband or her sister might have abused the child.

There were at least 25 one-hour visits between the mother and S.M.Q. supervised by SRS from April until October 19, 1988. Most of these visits left the child traumatized. Numerous times the child stated she did not want to continue the visits because she feared that her mother or her mother's husband would put hot sauce in her mouth or spank her. During the June 16, 1988 visit, the mother removed the child's pierced earrings because "Jesus did not like earrings." When left alone with her mother during the July 18, 1988 visit, S.M.Q. ran from the room crying. At the last visit, which occurred on October 19, 1988, the child became upset when the mother's husband put a dollar on his chest and required the child to kiss him for the dollar. Because of the disruptive effect of the visits on the child and the psychologist's recommendation, the visits were discontinued and a motion to terminate parental rights was filed on September 8, 1988.

The district court heard evidence on the motion to sever on November 16, 18, 21, and December 1, 1988, and granted the motion on January 12, 1989. K.S.A. 38-1583(b) lists the factors the court shall consider when determining if it is in the best interests of the child to sever parental rights. The language of K.S.A. 38-1583 requires that the best interests of the child be considered. The court's primary consideration is the physical, mental, or emotional condition and the needs of the child. The existence of any one factor standing alone may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-1583(e). When the trial court terminated the natural mother's parental rights, it phrased its order in the language of 38-1583(b) and made the following findings:

"2. [B]y clear and convincing evidence, it has been proved that [K.F.H.], the mother, and [B.W.Q.], the father, are each unfit by reason of conduct and condition which renders said parents unable to care properly for said child and such conduct and condition is unlikely to change in the foreseeable future [38-1583(a)] as indicated by:

a. emotional illness, mental illness, mental deficiency or physical disability of the mother, of such duration or nature as to render the mother unlikely to care for the ongoing physical, mental and emotional needs of the child [38-1583(b)(1)];
b. conduct toward the child by the mother of physically, emotionally or sexually cruel or abusive nature [38-1583(b)(2)];
c. physical, mental or emotional neglect of the child [38-1583(b)(4)];
d. inability to rehabilitate the family through reasonable efforts of appropriate public or private child care agencies [38-1583(b)(7)];
. . . .
g. failure to carry out a reasonable plan approved by the court directed toward the reintegration of the child into the mother's home [38-1583(c)(3)]."

In addition to the order, the record contains the trial judge's statement when announcing his decision:

"I specifically find that [the mother's] emotional illness or mental illness or mental deficiency, whatever you wish to call it, as described by our professional witnesses as a personality disorder, I find that that is of such duration and nature as to render her unlikely to be able to care for the ongoing physical and mental and emotional needs of the child or to *overcome that in time to be able to do that in time for the benefit of the child.*" (Emphasis added.)

The trial judge's written order and oral statement in the record demonstrates the judge reviewed the evidence to discover if the mother could within a reasonable time assume the parenting function and took into consideration the evidence when determining the best interests of the child. The Court of Appeals found the language of the judge's order lacking in specificity as to what facts of physical, mental, sexual, or emotional abuse were relied on by the trial judge to support his judgment. We disagree with this finding.

For its scope of appellate review, the Court of Appeals relied on *In re A.S.*, 12 Kan. App. 2d 594, Syl. ¶ 5, 752 P.2d 705 (1988), which states that the record must contain "[s]ubstantial competent evidence of a clear and convincing nature to support a finding of parental unfitness and that parental conduct is unlikely to change in the foreseeable future." While the Court of Appeals correctly quoted Syl. ¶ 5 from *In re A.S.*, it did so without reading it in the context of that decision. Rather than quoting the scope of appellate review, the Court of Appeals in *In re A.S.* merely stated the "scope of review [has] been set forth by the appellate courts of this state on many occasions and need not be

repeated" (12 Kan. App. 2d at 595-96) and then referred to *In re J.G.*, 12 Kan. App. 2d 44, as stating the standard of appellate review. *In re J.G.* quotes the standard of appellate review of parental unfitness from *In re Reed*, 8 Kan. App. 2d 602, 605, 663 P.2d 675 (1983), which asserts:

"On appellate review, the findings of the lower court, that a child is 'deprived' and a parent 'unfit,' will not be disturbed if there is substantial competent evidence to support them. *In re Hamlett*, 2 Kan. App. 2d 642, 644, 586 P.2d 277 (1978). And, when reviewing the evidence, the appellate court considers it in the light most favorable to the party prevailing below. *In re Hambelton*, 2 Kan. App. 2d 68, 71, 574 P.2d 982, *rev. denied* 225 Kan. 844 (1978)."

These cases hold that the appellate court need only find there is substantial competent evidence within the record, whereas the district court must have found evidence of a clear and convincing nature. This interpretation of Syl. ¶ 5 of *In re A.S.* by the Court of Appeals in this case merges at the appellate level the standard of proof used by the trial court with the appellate review standard of "whether the court below had substantial competent evidence upon which to base its ruling." *In re Hamlett*, 2 Kan. App. 2d 642, 644, 586 P.2d 277 (1978).

The Court of Appeals opinion recognized that "apparently the trial court found that there was conduct toward the child by the mother of a physically, emotionally, or sexually cruel or abusive nature." Yet, the Court of Appeals held that the mother's parental rights must be terminated only when her emotional instability is of a substantial and long duration. The Court of Appeals found that the trial record did not support a finding that the mother's emotional instability was of such a duration. Nor did the Court of Appeals find the doctor's testimony proved the mother suffered from a personality disorder to such an extent that it interfered with her parenting skills. It also disagreed with the trial court's reliance on expert testimony that public or private child care agencies would be unable to rehabilitate the family through reasonable efforts. Rather, the Court of Appeals determined that the problems between the mother and the child "were the result of too much emotional interaction instead of too little."

The Court of Appeals determined there was no clear and convincing evidence that the "personality disorder" under which the

mother labors is such as to render her unlikely to be able to care for the child's needs in the future. It pointed out that the mother had made efforts to do everything that was asked of her and took into consideration that with future therapy the mother and child could be reunited within a year or two. The Court of Appeals reweighed the evidence and determined the trial court's severance of the mother's parental rights was improper because there was help available to improve the parenting skills of the mother.

The Court of Appeals opinion did not include the evidence of the mother's unstable mental condition found in the trial record. An example of the mother's unstable mental condition is the psychiatric social worker's letter of January 11, 1988. That letter indicates the mother's inconsistent attendance at scheduled meetings from May 1986 to December 1987 was largely responsible for a lack of progress in the treatment of the mother's diagnosed borderline personality with substance abuse dependency. Because of the mother's questionable parenting abilities and admitted child abuse, the social worker stated, "[S]he is subject to continue such behavior without adequate therapy." Another therapist said the mother's inability to cope with her chronic stress and paranoid personality were risk factors if the child was returned to her. We note that the majority opinion also did not mention the clinical psychologist's caveat that the mother's need for long-term psychotherapy may not be achieved because of her difficulty in trusting other people and her inability to maintain a therapeutic relationship.

In his dissent, Judge Gernon pointed out that three qualified therapists, who worked directly with the mother, found she could only assume parenting responsibilities after long-term intensive therapy for her own personality disorders. The dissent is supported by the record, which contains substantial competent evidence of the mother's chronic lack of cooperation in pursuing therapy, including the mother's sporadic attempts at therapy during 1986-87, lack of finishing any parenting class, and only attending eight of her therapy sessions from 1988 until the termination proceedings. The mother's long history of refusal of assistance and therapy for rehabilitation demonstrate the child cannot be returned to the parent within a reasonable time.

After a child has been adjudicated a child in need of care and the court is considering termination of parental rights, the court shall give primary consideration to the physical, mental, or emotional conditions and needs of the child. The interplay between the child's best interests and parental rights is the difficult balancing task the court must perform when deciding whether or not to terminate parental rights. Not noted in the majority opinion was the child's progress both in human relationships and in learning ability in a foster home environment, which regressed after emotional and disruptive visits by the mother. Nor did the majority opinion consider the medical fact that the child already suffered mental problems and needed a stable environment in order to prevent lifelong difficulties. In its decision, the Court of Appeals did not find the instances of abusive conduct sufficient for termination; however, the record reflects the burn incident, evidence of sexual abuse, the preschool teacher's report of abuse, and the child's own trauma when relating with her mother. Although the Court of Appeals found the mother "made an effort to do everything that was asked of her," it overlooked the fact that she never advised SRS of the child's return to her without the therapist's approval. As a result of the child living with the mother, in violation of the court's order, twelve reports of abuse were made.

The appellate review standard framed by the Court of Appeals does not comply with our statement in *In re Nelson,* 216 Kan. 271, 276, 531 P.2d 48 (1975), that "[i]t is not our province to usurp the court's fact-finding function and reweigh the total evidence adduced." The applicable scope of review for the appellate courts in a termination of parental rights case is not whether the record contains substantial competent evidence of a clear and convincing nature but whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that parental rights should be terminated.

After considering the evidence in the light most favorable to the party who prevailed in the trial court, we agree with Judge Gernon there is substantial competent evidence in the record of the quality required to uphold the district court's decision that

the mother was unfit and that it is in the best interests of S.M.Q. to terminate the mother's parental rights.

We, therefore, reverse the decision of the Court of Appeals on the termination issue and affirm as to the child in need of care issue. The decision of the district court is affirmed.