No. 22,365.

R. C. JACKMAN, *Appellant*, v. THE LAWRENCE DRILLING AND
DEVELOPMENT COMPANY (S. H. HALE and HENRY McCAND-
LESS, *Appellees*).

### SYLLABUS BY THE COURT.

1. CANCELLATION OF WRITTEN INSTRUMENTS — *Nature of Evidence Required*. It is often said that in certain classes of cases proof is required that is "clear, distinct and satisfactory," "clear and convincing," "clear, precise and indubitable." These and similar expressions convey substantially the same meaning, which is, that the evidence should be "clear," that is, not ambiguous, doubtful, equivocal, or contradictory, and should be perspicuous and pointed to the issue under investigation; and "satisfactory" in the sense that the source from which it comes is of such a credible nature that the court and jury, as men of ordinary intelligence, discretion, and caution, may repose confidence in it. Absolute certainty is, of course, not required.

2. SAME—*Findings Supported by Evidence*. The evidence upon which the judgment in the present case rests is examined, and held to meet the test of "clear, distinct and satisfactory proof," and the findings being supported by competent and substantial testimony, it will be presumed that the trial court applied the proper test in weighing the facts. (*Woddell v. Allbrecht*, 80 Kan. 736, 104 Pac. 559.)

3. SAME—*Presumption that Instrument on Record Speaks the Truth—Presumption is Rebuttable*. While there is a presumption that the register of deeds performed his duty properly, and that an instrument as recorded speaks the truth, the presumption is rebuttable. The original instrument is primary, the recorded copy secondary, evidence. If a variance appear between the original, as filed, and the record, the original prevails; and in a case where the original, after being recorded, is lost (proper foundation being laid), oral testimony is competent to prove the contents of the original instrument, and that it differs from the recorded copy.

4. SAME—*Oil-and-gas Lease — Incorrectly Recorded — Evidence — Findings*. The plaintiff purchased a tract of land subject to an oil and gas lease, the record of which in the office of the register of deeds showed the surrender clause to read: "That the said party of the second part (the lessee) shall surrender this lease to said party of the first part, at any time upon payment of $50, or a good and sufficient quitclaim deed, and that thereupon the lease shall cease and determine." In an action to cancel the lease, plaintiff alleged a tender of the $50 and demand for a quitclaim deed; and that the tender and demand had been refused. The answer alleged that the provision in the original lease was that the party of the second part "shall have the right to sur-

render this lease to said party of the first part, at any time upon payment of $50, or a good and sufficient quitclaim deed," and that the words "have the right to" were not entered by the register of deeds upon the record. On the trial, after showing that the original instrument had been lost, the defendants offered evidence to sustain their contention. The court found the facts in defendants' favor. *Held,* that the findings are sustained by substantial and competent testimony, and that a judgment in favor of the defendants, establishing the lease as it was originally written, will not be disturbed.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed January 10, 1920. Affirmed.

*W. B. Pleasant,* of Ottawa, *Justin D. Bowersock,* and *Robert B. Fizzell,* both of Kansas City, Mo., for the appellant.

*L. P. Brooks,* of Wichita, for the appellees.

The opinion of the court was delivered by

PORTER, J.: In an action to cancel an oil-and-gas lease the defendants prevailed, and the plaintiff appeals.

The lease was dated March 1, 1916, and was executed by A. J. Elless and wife, as lessors, to the Lawrence Drilling & Development Company, lessee, and covered a section of land in Franklin county, which belonged to Elless and wife. In October, 1916, the original lessee assigned the lease to McCandless and Hale, who are the real defendants. The Lawrence Drilling & Development Company filed a disclaimer. The plaintiff became the owner of the land under a warranty deed from Elless and wife, which was executed February 28, 1918. On April 26, 1918, he tendered to Hale and McCandless $50 and demanded a surrender of the lease and a quitclaim deed to the property, which they refused.

The whole controversy arises over a difference in the surrender clause of the lease as the lease appears of record in the office of the register of deeds, and what the defendants claim the original lease showed.

The answer alleged, first, that the original lessee and the defendants had drilled seven producing wells and had equipped the property with pumps, tanks, and pipe lines, all at an expense of several thousand dollars. It further alleged that the surrender clause in the original lease provided that "the said party of the second part (the lessee) shall *have the right*

Jackman v. Development Co.

*to* surrender this lease to said party of the first part at any time, upon payment of $50, or a good and sufficient quitclaim deed," and that the words "have the right to," which were in the original lease, were not entered by the register of deeds upon the record, but were omitted therefrom.

On the trial it was shown that the lease was executed in duplicate, and that one copy was retained by Elless and wife, which later came into the possession of the plaintiff when he purchased the land. The plaintiff introduced the record from the register of deeds' office, showing the lease as recorded, with the disputed clause reading as follows:

"It is further mutually agreed by and between said party of the first part and said party of the second part, that the said party of the second part shall surrender this lease to said party of the first part at any time, upon payment of $50.00, or a good and sufficient quitclaim deed, and that thereupon this lease shall cease and determine, and be and become absolutely null and void, and no longer binding upon either party."

The plaintiff also produced the copy of the lease retained by the Ellesses, in which the disputed clause appears as follows:

"It is further mutually agreed by and between said party of the first part and said party of the second part, that the said party of the second part shall ============ surrender this lease to said party of the first part at any time upon the payment of *$50, or a good and sufficient quitclaim deed*," etc., etc.

The italicized words are written in with pen and ink, the remainder being a printed form. The words "have the right to," which appeared in the original printed form between "shall" and "surrender" in the latter part of the clause, were so obliterated in the copy as to be indistinguishable.

The defendants, after showing that the copy of the original lease which was filed for record had been lost or mislaid and could not be found, introduced evidence of a number of witnesses to show the contents of the lost instrument.

L. P. Brooks testified that he was the attorney for Hale and McCandless; that they brought to his office three gas leases, the Elless lease, the Borland lease, and the Brewer lease, for which they were negotiating; that he made a personal, careful examination of each of them and compared them together; and that they were all on the same printed form.

The Brewer lease was handed to the witness, who testified that the printed words "have the right to" were identical in all three of the leases, and that he and McCandless and Remler put the three leases on a table side by side and read and compared them.

Mr. McCandless, one of the defendants, testified to comparing the leases with Brooks to see that they were all alike, and that they all read "shall have the right to surrender," etc. He testified that the defendants paid $20,000 for the Elless lease, and afterwards spent on the lease between $17,000 and $18,000.

W. G. Tullos, the notary public who took the acknowledgment of the three leases, testified that the Elless lease was signed at the bank of which he was cashier. The witness had a very definite remembrance of what the clause in question was about, and said that "whether it was right or not, it was on my recommendation that it was put in"; that Mr. Elless was a customer of the bank and brought the lease to him to have it looked over. "I would say positively that the heavy black line there striking out the words 'have the right to' were not there at the time I acknowledged the lease, because by striking those words out it would change the entire meaning of the paragraph." He testified that Brewer, Borland and Elless all advised with him in regard to their leases, and that—

"There had been some difficulty among the people in regard to getting some of the leases off the land, which had involved some considerable expense, and that was the sole purpose I had in mind when I advised them."

Mr. DeWoody, a contractor and driller, represented the Lawrence Drilling & Development Company at the time the leases were taken. He testified that he had no interest in the controversy; that he prepared all three of the leases; that he was present when the Elless lease was acknowledged; and that the words "have the right to" in the clause in dispute were not stricken out of the Elless lease at the time it was executed. He had never seen a lease on that form executed with these words stricken out; he heard the conversation between Mr. Tullos and Mr. Elless in regard to the provision for the payment of $50, "or a good and sufficient quitclaim deed." He testified that the clause referred to was put in at the suggestion of the notary public, Mr. Tullos; that when they went to the

bank to have the acknowledgment taken, the duplicate copy kept by Elless and wife was left at the Elless home; and that there had been no talk between him and Elless in reference to striking out the words "have the right to."

The court made findings of fact in defendants' favor, which are, that the register of deeds, through mistake or otherwise, failed to record the lease accurately; that in the original lease the provision was that the lessee "shall have the right to" surrender the lease to the lessor at any time upon payment of $50, or a good and sufficient quitclaim deed. The court found that the defendants paid $20,000 for the lease, and since its purchase have spent $18,000 in developing it, and that the lease is a valuable one. Another finding is that before buying the land, plaintiff examined it and found the defendants in possession and operating the land; that he bought the land relying upon the accuracy of the record; that at the time he purchased, Elless and wife gave him their duplicate copy of the lease; that this copy corresponds exactly with the record; and that there was no testimony offered as to the condition of the duplicate copy when it came into the plaintiff's possession.

Plaintiff's main contention is, that the character of proof upon which the judgment rests is wholly insufficient to overcome the presumption that the register of deeds performed his duty properly, and that the record speaks the truth.

It is insisted that the evidence offered is not of that clear, complete and satisfactory character which is required to impeach the official statement of the officer, and authorities are cited which declare that the adoption of any other rule of evidence to overcome the presumption of the truth of the record would result in the general insecurity of titles to real estate.

Authorities are cited in support of the general rule that testimony must be clear and satisfactory for the purpose of varying or reforming a written instrument, or proving the contents of a lost writing. A great deal has been written into the law respecting "clear and decisive proof," "clear and satisfactory evidence," "clear and convincing proof," "clear, precise and indubitable evidence," but these expressions substantially convey the same idea and require the same degree of proof. The supreme court of Pennsylvania, in speaking of the phrase "clear, precise and indubitable," used this language:

"It is meant that witnesses shall be found to be credible—that the facts to which they testify are distinctly remembered—that details are narrated exactly and in due order—and that their statements are true. . . . Absolute certainty is of course out of the question. Terms are used with relation to their subject-matter. The apparently distinct testimony of the most intelligent witness may possibly be fabricated. The clear statement of the most upright witness may possibly be mistaken. It has been in view of considerations like these, that in certain classes of cases, proof is required that is 'clear, distinct and *entirely* satisfactory.' " (*Spencer v. Colt*, 89 Pa. St. 314, 318, 319.)

Where the question was whether a written instrument should be reformed so as to express the real intention of the parties, it is said that—

"The expression 'clear and satisfactory' in the sense in which it is here used, should be taken to mean that it should be 'clear' in the sense that the evidence upon which reformation is based is not ambiguous, equivocal, or contradictory, and should be perspicuous and pointed to the issue under investigation, and 'satisfactory' in the sense that the source from which it comes is of such a credible nature that the court and jury, as men of ordinary intelligence, discretion, and caution, may repose confidence in it." (2 Words and Phrases, p. 1221.)

We start with the presumption, of course, that the register of deeds performed his duty properly, and that the record is correct; but this presumption is rebuttable. (*Zeiner v. Edgar*, 79 Kan. 406, 99 Pac. 614.) Mistakes sometimes occur in copying, and in comparing the original with the recorded copy. The legislature of 1915 provided for making photographic copies, and for binding, paging and indexing them, and making them thereafter record books. The act was made supplemental to the existing statutes, and recognized the fact that the preservation of photographic copies of such instruments would practically do away with all possibility of errors or mistakes. (Laws 1915, ch. 286, § 1.) The original instrument is primary evidence, and the recorded copy but secondary evidence. If a variance were shown to exist between the original as it was filed and the recorded copy, the former would prevail.

In our opinion, the evidence upon which the judgment in the present case rests meets the test of "clear, distinct and satisfactory proof" within the rules laid down in the foregoing authorities, assuming that the trial court found the witnesses to be credible; the facts to which they testify are distinctly remembered; the details are narrated exactly and in due order;

Jackman v. Development Co.

and the court has found their statements to be true. The late Justice Benson, speaking for the court, in a case for the specific performance of a parol contract for the conveyance of land, said that clear and satisfactory evidence should be required to take the case out of the operation of the statute of frauds, "but, where the findings are supported by competent and substantial testimony, it will be presumed that the district court applied the proper test in weighing the evidence and finding the facts." (*Wooddell v. Allbrecht,* 80 Kan. 736, 737, 738, 104 Pac. 559.)

The defendants marshal the facts in the case somewhat differently from the plaintiff. In their statement they stress the fact that before purchasing the property the plaintiff sent a certified copy of the lease as it appeared of record to an attorney, and after being advised that if he purchased the land he could compel the defendants to surrender the lease by tendering them payment of $50, took the conveyance to the land, and in less than sixty days thereafter made the tender and demanded cancellation of the lease; that his own testimony shows that he knew before he purchased the land that it was leased for oil and that there were several producing wells on the property with pumping jacks, oil tanks and other machinery. The trial court may have believed from the evidence that the plaintiff was in the position of having purchased a lawsuit.

A strong circumstance in favor of the court's finding is that it seems highly improbable that the parties could have intended to have inserted a clause in the lease giving to the lessor the right to cancel the lease at any time upon payment of $50, or that any business men would have undertaken to spend thousands of dollars in developing the lease, if, after oil should be discovered, the lessor had the right to compel the cancellation of the lease by the mere payment of $50. An additional reason suggests itself, which is, that the language in the surrender clause "upon payment of $50, or a good and sufficient quitclaim deed," was intended, in our opinion, to state alternative conditions, and it is clear that the party who was authorized to make the payment was the same party who might, in lieu of such payment, execute and deliver a quitclaim deed. It certainly never was contemplated that any situation could arise which would require the quit-

claim deed to be executed by the lessor. That was something to be done by the lessee on condition that the payment of money was not made; and we think it is clear that it was the lessee, and not the lessor, who was to make the payment. This was shown, also, from evidence given by defendants' witnesses, some of them apparently disinterested.

There is a complaint that some of the findings are not supported by evidence, and that there are misstatements of facts in the findings. One or two unimportant facts are misstated, but it is obvious that they could not have, in any way, affected the judgment or the general finding in defendants' favor. Nor do we think the judgment erroneous on the theory that it is outside the issues raised by the pleadings. It is true the answer did not ask for the correction of the record, but upon the findings of fact the court could do nothing else than to establish the contents of the lease as between the plaintiff and the defendants.

There is a complaint because of the finding to the effect that the register of deeds "through mistake or otherwise" failed to properly record the lease. We do not know, of course, what the trial court had in mind by the use of the word "otherwise." It was sufficient for the court to find that the record did not speak the truth.

It is insisted that if the original lease did not have the words "have the right to" crossed out, then somebody has committed a crime, because the duplicate copy retained by Elless now has such an erasure, and it is inconceivable that the register would omit from the record the identical words erased from the copy which he had never seen. Authorities are cited in support of the rule that there is a presumption of law against crime and illegality. We do not think it can be said the trial court finds any one guilty of forgery, or of manufacturing evidence for fraudulent purposes. It was sufficient for the court to find that the lease was not properly recorded. (*Zeiner v. Edgar*, supra.)

We discover no error in the refusal to grant a new trial on the ground of surprise, or on the ground that the answer did not present any issue as to a lost instrument. It was not necessary to plead the fact that the instrument was lost in order to render admissible oral evidence as to its contents.

The only objection to the introduction of the testimony as to the contents of the lost instrument which we find in the abstract is one upon the theory that the evidence was incompetent, irrelevant, and immaterial, not proper testimony to contradict the record or the printed copy of the lease which had been introduced in evidence. There was no showing of any surprise or a request for time to procure additional testimony. The evidence offered in the form of affidavits appears to be entirely cumulative. At all events, it cannot be said that there was any abuse of discretion in overruling the motion.

The judgment is affirmed.