No. 22,998.

A. J. ELLESS and LAURA B. ELLESS, *Appellees,* v. THE STATE
BANK OF RANTOUL et al. (R. C. JACKMAN, *Appellant*).

SYLLABUS BY THE COURT.

SALE OF LAND—*Action for Price—Defense Breach of Warranty Against
Encumbrances—Oil and Gas Lease.* An owner of land executed an
oil and gas lease which contained the following stipulation:

"It is further mutually agreed by and between said party of the first
part, and said party of the second part, that the said party of the sec-
ond part shall have the right to surrender this lease to said party of
the first part at any time upon payment of $50.00 on a good and suffi-
cient quitclaim deed."

The owner conveyed the land by a warranty deed and assigned his
interest in the lease to another. The conveyance was made subject to
the oil and gas lease which it was recited had been duly recorded in a
certain volume of the records. In recording the lease the words in the
forfeiture clause "have the right to" between the words "shall" and
"surrender" were inadvertently omitted. When the land was conveyed
to the grantee the lessee had expended $18,000 in development and had
seven oil-producing wells on it. Of these facts the grantee had knowl-
edge, and the lease at that time was worth from $15,000 to $25,000.
Subsequently the grantee asserted the right to terminate the lease on
the payment of $50, but his claim was refused by the lessees. In this
action brought by the grantor to recover the balance of the considera-
tion the grantee asserted a breach of the warranty in the conveyance.
*Held,* that the forfeiture clause did not give either the owner or his
grantee the option to compel a surrender of the lease on the payment of
$50, and that there was no breach of the warranty contained in the
deed of the grantor.

Appeal from Franklin district court; CHARLES A. SMART,
judge. Opinion filed February 12, 1921. Modified and af-
firmed.

W. B. Pleasant, of Ottawa, *Justin D. Bowersock,* and *Robert
B. Fizzell,* both of Kansas City, Mo., for the appellant.

*J. L. Shelden,* and *W. S. Jenks,* both of Ottawa, for the
appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the plaintiffs
to recover from the defendant, Jackman, and the State Bank
of Rantoul, the balance of the purchase price of a tract of land.
Judgment was given for plaintiffs, and Jackman appeals.

On March 29, 1918, the plaintiffs sold and conveyed 578 acres of land to Jackman by a warranty deed for $6,500, clear of all encumbrances, except two mortgages, one for $2,500 and another for $8,700, and also a certain oil and gas lease, given to the Lawrence Drilling & Development Company, which was subsequently assigned to S. H. Hale and Henry McCandless. Upon delivery of the deed, Jackman paid all of the purchase money except $5,000 which was deposited with the State Bank of Rantoul to be held in escrow until the title to the land had been approved by Jackman's attorney. The deed was accepted and Jackman at once took possession of the land and still holds possession of it. Shortly after the transfer Jackman notified the bank not to pay the $5,000 deposit to plaintiffs, claiming that there was a breach of warranty in that the land was subject to a different oil and gas lease from the one described in the contract of sale. In the conveyance of the land the lease was not described further than that it was subject to the lease executed to the lessee on a certain date and was identified by a statement that it was "duly recorded in 'Miscl. 10,' page 46, which 1st parties convey hereby to said 2nd party." In the original lease as prepared and signed was the following provision:

"It is further mutually agreed by and between said party of the first part, and said party of the second part, that the said party of the second part shall have the right to surrender this lease to said party of the first part at any time upon payment of $50.00 or a good and sufficient quitclaim deed."

In recording the instrument the register of deeds erroneously omitted from the records "have the right to" between the words "shall" and "surrender," so as to read:

"That the said party of the second part shall surrender this lease to said party of the first part at any time upon payment of $50.00 or a good and sufficient quitclaim deed."

Jackman claiming that he had the option to require a surrender of the lease upon the payment of $50, tendered to Hale and McCandless that amount, and demanded a surrender of the lease which was refused. It appears that the plaintiffs, the lessors, requested that the four words mentioned should be stricken out but for some reason not shown they were not stricken from the original lease.

Elless v. Jackman.

From the evidence it was found that the sole object of the lessors as well as the lessee in writing into the forfeiture clause, "upon payment of $50.00 or a good and sufficient quitclaim deed," and the sole object of the lessors in asking that the four words be stricken out—

"Was to place themselves in such a position that if the drilling company failed to develop the lease they could have it cancelled either by getting a quitclaim deed from the development company or by receiving from the development company $50.00 which in the judgment of the Elless people would be sufficient to defray the expenses of clearing the record. No party having to do with the securing and execution of this lease had any thought that Mr. Elless could secure a cancellation of this lease by paying $50.00 if its terms and conditions were complied with by the development company."

As against the claim that the lessors or their grantee, Jackman, had the right to cancel the lease on the payment of $50 and that this was within the contemplation of the parties when the lease was executed, it may be noted that $20,000 was paid for the lease of this land and another small tract of unproved land and that when the lease was sold to Jackman, eight or nine wells had been drilled upon the property, and seven of them were oil-producing wells, equipped for pumping, but because of a temporary suspension of the work, the lessees were paying the plaintiff, Elless, $90 per month during the suspension. At that time there had been expended in development of the lease $18,000. It may also be stated that when Jackman purchased the land he examined the property and had full knowledge of the development of it. He knew that there were seven producing wells on it and that Hale and McCandless were paying Elless $90 per month because of the temporary suspension of operations. It was found that the lease was worth from $15,000 to $25,000, but no proof was offered as to the value of the farm separate and distinct from the oil and gas lease. If the lease, valuable and productive as it was shown to be, could be terminated at the option of the lessor on the payment of $50, its value to the lessees would only be nominal. The court held against the theory of Jackman that he had the option and could compel the lessees to surrender the lease upon payment of $50, and hence gave judgment for plaintiffs.

The question raised by the defendant as to the lease had been

before the court in the companion case of *Jackman v. Development Co.,* 106 Kan. 59, 187 Pac. 258, and the decision there made is largely controlling here. In effect it was held that on the face of the lease as recorded the option to terminate it on the payment of $50 was in the lessees, and the surrounding circumstances tend to confirm this view. It was said—

"An additional reason suggests itself, which is, that the language in the surrender clause 'upon payment of $50.00 or a good and sufficient quitclaim deed,' was intended, in our opinion, to state alternative conditions, and it is clear that the party who was authorized to make the payment was the same party who might, in lieu of such payment, execute and deliver a quitclaim deed. It certainly never was contemplated that any situation could arise which would require the quitclaim deed to be executed by the lessor. That was something to be done by the lessee on condition that the payment of money was not made; and we think it is clear that it was the lessee, and not the lessor, who was to make the payment." (*Jackman v. Development Co.,* 106 Kan. 59, 65, 187 Pac. 258.)

No representations were made by the plaintiffs to Jackman in regard to the forfeiture clause when the land was sold, other than was contained in the writings, and the recital in the deed does not warrant that the lease was in the terms shown by the record, but only that the land was conveyed subject to the lease which was identified as the one duly recorded in a certain volume of the records. Upon an examination of the record Jackman necessarily discovered the peculiar clause that the surrender was to be made on the payment of $50 or a good and sufficient quitclaim deed, and the fact that on the land were seven producing wells which with machinery and equipment were worth $18,000, all of which was well known to him, was sufficient to arrest the attention and inquiry of anyone. Under the language of the clause as recorded, and the known circumstances, we think the lease should be interpreted the same as if the words "have the right to" as written in the instrument, had been included in the record. While the word "shall" is used in the clause in question and in common parlance is compulsory in its meaning, it is sometimes used interchangeably with "may" and in view of the other provisions of the writing and the manifest intention of the parties to the lease, it should be construed to mean "may." (35 Cyc. 1452). Giving it that meaning the clause would read:

"The said party of the second part may surrender the lease to the party of the first part at any time upon the payment of $50.00 or a good and sufficient quitclaim deed."

The interpretation contended for leads to an absurd and unreasonable result; that is, that an oil and gas lease which cost $20,000, on which $18,000 had been expended, which was of the present value of from $15,000 to $25,000, was to be surrendered to the owner of the land whenever he chose to pay $50 for the surrender. It would also be unreasonable and absurd to construe the clause so that the owner of the land could require the surrender of the lease upon his execution of a quitclaim deed to the lessees, the owners of the lease. (*Jackman v. Development Co.*, supra.)

Attention is called to an error in the amount of the judgment. An inadvertent mistake appears to have been made in the computation of the interest due upon mortgages, to which the attention of the court was not called on the motion for a new trial. There is no dispute as to the correct amount due and therefore the judgment must be modified by deducting the amount erroneously added to it and when so modified the judgment is affirmed.