187 P.3d 594 (2008)
In the Interest of B.D.-Y., a Child under the Age of 18.
No. 99,509.
Supreme Court of Kansas.
July 18, 2008.
*596 D. Charles Ball, of Law Offices of D. Charles Ball, argued the cause and was on the brief for appellant natural mother.
Kristiane N. Gray, assistant district attorney, argued the cause, and Jerome A. Gorman, district attorney, and Stephen N. Six, attorney general, were with her on the brief for appellee.
The opinion of the court was delivered by NUSS, J.:
The district court found that infant B.D.-Y. was a child in need of care (CINC) under K.S.A.2007 Supp. 38-2202(d) without determining which of her three family caretakers caused her injuries. After the court placed limitations on their contact with B.D.-Y., the natural mother appealed. We transferred from the Court of Appeals; our jurisdiction is pursuant to K.S.A.2007 Supp. 38-2273(a).
The ultimate issue on appeal is as follows:
1. Did sufficient evidence support the trial court's finding that B.D.-Y. was a CINC?
Mother's docketing statement, however, also argued an incongruity between the trial court requirement under K.S.A.2007 Supp. 38-2250 to find a CINC by "clear and convincing evidence" and the appellate court's purported lower standard for reviewing that particular finding's factual support for merely substantial competent evidence. Accordingly, we ordered briefing on two additional issues:
2. Does "clear and convincing evidence" refer to a quantum of evidence representing an intermediate standard of proof, i.e., more than a preponderance of the evidence? Or does it refer simply to the quality of evidence which must be met under a preponderance of the evidence standard?
3. Is the appellate standard of review of trial court findings, made under a clear and convincing standard, simply to determine if substantial competent evidence exists to support the findings? Or is the standard whether substantial competent evidence of a clear and convincing quality exists to support the findings? Or is there an alternative standard?
We affirm the district court.

FACTS
B.D.-Y. was born to D.D. (Mother) and R.Y. (Father) in February 2007. Mother and Father were common-law married and shared care-taking responsibilities with the child's maternal grandmother. At birth, B.D.-Y. had problems eating and swallowing. A month later, doctors at Children's Mercy Hospital performed surgery in which they inserted a feeding tube.
During a routine check-up, on April 17, 2007, B.D.-Y.'s primary care physician noticed bruising on her face, legs, and chest. As a result, 3 days later B.D.-Y. was referred to Children's Mercy Hospital.
Dr. Martha Walsh, a pediatrician specializing in child abuse, evaluated B.D.-Y. at the hospital. The doctor noticed bruising on B.D.-Y.'s face and chest, and an abrasion on the back of her head. Although bruising on the legs had been reported, Dr. Walsh did not see any. She also noted that B.D.-Y. suffered pain when turning her head to the right. X-rays revealed that B.D.-Y. had at least 12 rib fractures.
In an interview with Megan Robertson, a hospital social worker, the parents explained that the bruising may have resulted from the "fishy-face exercises" they were told to conduct with B.D.-Y. to improve her sucking. The parents also explained that they had done some internet research and discovered that Zantac, a drug B.D.-Y. was taking, made people more susceptible to bruising.
Father stated that B.D.-Y.'s head abrasion was probably caused by her sliding across the floor during the exercises they did to help with her leg movement. He explained that her stomach bruising stemmed from an incident in which she had fallen back and he *597 pulled her forward. The bruising was around the "Mickey button," the place where the feeding tube was inserted.
The parents remarked that they had no idea what could have caused B.D.-Y.'s rib fractures. But while Mother was being interviewed by Beth Harris, another hospital social worker, Father interrupted to say that a friend reminded him that approximately 10 days earlier, Father had performed CPR on B.D.-Y. He said that he pressed on her back, breathed in her mouth, and did chest compressions. Father thought the rib fractures might have been caused by the chest compressions.
Father also said that while he did not call 911, he did call the nurse line. Both parents frequently called the nurse line to ask questions about B.D.-Y.
Father additionally told social workers that he had suffered from seizures since a September 11, 2004, car accident. However, no medical doctor has diagnosed him with epilepsy or any type of brain injury. He was given a prescription to reduce the number of seizures, but believes the seizures still prevent him from working. He also told the social workers that he is often unable to remember the time frame surrounding the seizures.
A court petition alleging that B.D.-Y. was a CINC was filed on April 24, 2007. She was removed from the home and placed in foster care the next day. A trial was held the following September.
At trial, B.D.-Y.'s daily routine was outlined. Mother was employed during regular daytime hours. She would wake up every day and take care of B.D.-Y. until she went to work. Grandmother would then come over and help for a few hours. Father would wake up a little later and would then be solely responsible for B.D.-Y. for the next few hours. Grandmother would return later in the afternoon to help Father, and Mother would return around 5 p.m.
Dr. Walsh testified that the bruising and the abrasion were atypical of a child B.D.-Y.'s age, as she was not at "cruising age" yet. Dr. Walsh explained that these types of injuries are usually the result of a traumatic injury. She testified that the fishy-face maneuvers do not cause bruising. Additionally, to determine if Zantac was causing the bruising, B.D.-Y.'s platelet count was measured three times while she was at the hospital. Her platelet count was always normal.
Dr. Walsh also discussed the multiple rib fractures. She first explained that they were lateral and posterior, which were not typical of CPR-caused injuries. Dr. Walsh also explained that rib fractures are rare in infants because their ribs are so pliable. She further estimated that the fractures were 10 to 14 days old. She suspected child abuse because the explanations given for all of the injuries were implausible. She could not determine who had caused the injuries, however, or whether they were intentional or accidental.
Social worker Penny Clodfelter testified about her discussion with Father regarding the CPR incident. Father told her that the nurse who answered the nurse line told him he did not need to call 911. Clodfelter questioned whether this occurred because in her experience, if a child is not breathing, the nurse would recommend getting immediate medical attention. According to Clodfelter, Father could not remember whether he had called Mother to tell her about the incident.
Psychologist Dr. Ryabik reviewed Father's medical records and met with him several times before trial. He testified that he observed Father having a seizure the morning of the trial. According to Dr. Ryabik, if Father continued to care for B.D.-Y., his seizures would require him to be monitored.
Dr. Young, a pathologist, testified for Father. According to Dr. Young, it is impossible to review medical records and determine whether an injury was intentionally or accidentally inflicted. He also said it is impossible to determine who caused the injuries. Dr. Young opined that all of the injuries could have been caused accidentally by Father during one of his seizures, and Father would not even remember the accident occurring.
The trial court found B.D.-Y. to be a CINC under K.S.A.2007 Supp. 38-2202(d)(1), (d)(2), and (d)(3). It rejected as implausible Dr. *598 Young's suggestion that all of B.D.-Y.'s injuries resulted from one accidental event, determining that B.D.-Y. was either abused or injured in a series of accidents. It also rejected the parents' explanations for the injuries. Finally, the court determined that even if the injuries were accidentally caused during one of Father's seizures, B.D.-Y. was nevertheless without proper parental care and control.

ANALYSIS
Mother claims that because there was no showing that B.D.-Y.'s injuries were caused through her parents' intent or negligence, the evidence was insufficient to support the trial court finding that B.D.-Y. was a CINC. Before considering that claim, however, we must determine the parameters of our review.
Issue 1: Clear and convincing evidence is not simply a quality of proof.
The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a child in need of care." K.S.A.2007 Supp. 38-2250. Besides CINC cases, the clear and convincing evidence standard of proof applies to a variety of other causes of action in Kansas. See, e.g., In re Arabia, 270 Kan. 742, 19 P.3d 113 (2001) (attorney discipline); Ortega v. IBP, Inc., 255 Kan. 513, 874 P.2d 1188 (1994) (retaliation for workers compensation claim); Chandler v. Central Oil Corp., 253 Kan. 50, 853 P.2d 649 (1993) (to prove invalidity of marriage); Barbara Oil Co. v. Kansas Gas Supply Corp., 250 Kan. 438, 827 P.2d 24 (1992) (whether agency relationship exists); In re Kerns, 225 Kan. 746, 594 P.2d 187 (1979) (permanent deprivation of parental rights); Hoch v. Hoch, 187 Kan. 730, 359 P.2d 839 (1961) (fraud); Jackman v. Development Co., 106 Kan. 59, 187 P. 258 (1920) (action to cancel oil and gas lease).
We first examine what is meant by "clear and convincing evidence." The parties agree that it is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt. See Addington v. Texas, 441 U.S. 418, 423-24, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); In re S.M.Q., 247 Kan. 231, 796 P.2d 543 (1990). We agree. Accordingly, the clear and convincing requirement is best understood in relation to these other two standards.
We have defined preponderance of the evidence as "`evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.' Black's Law Dictionary 1182 (6th ed.1990). In other words, a `preponderance of the evidence' means that evidence which shows a fact is more probably true than not true." Ortega, 255 Kan. at 527-28, 874 P.2d 1188; see PIK Civ. 4th 102.10. Because this standard "results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless `particularly important individual interests or rights are at stake.'" Ortega, 255 Kan. at 528, 874 P.2d 1188 (citing Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 [1991]).
In criminal cases, however, a higher standard of proof is required because of the greater interests at stake. "[T]he interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment"requiring "under the Due Process clause that the state prove the guilt of an accused beyond a reasonable doubt." Addington, 441 U.S. at 423-24, 99 S.Ct. 1804.
While we have been willing to define "preponderance of the evidence," we have been unwilling to define "beyond a reasonable doubt." As we said in State v. Walker, 276 Kan. 939, 955-56, 80 P.3d 1132 (2003), "`"No definition or explanation can make any clearer what is meant by the phrase `reasonable doubt' than that which is imparted by the words themselves."'" (Quoting State v. Bridges, 29 Kan. 138, 141 [1883]). We have generally refrained because it "usually leads to a hopeless thicket of redundant phrases and legalese, which tends to obfuscate *599 rather than assist the jury." Walker, 276 Kan. at 956, 80 P.3d 1132.
Defining the phrase that lies between these two standards has similarly proven troublesome. As we stated in Fox v. Wilson, 211 Kan. 563, 578, 507 P.2d 252 (1973):
"The meaning of such phrases as `clear and convincing proof' or `by evidence that is clear, convincing and satisfactory' has plagued this and other courts for many years. The phrases are used largely in cases involving fraud, oral contracts with decedents, actions to reform or set aside deeds or prove lost deeds, and the like, where for one reason or another it is felt that a `mere preponderance' of the evidence is insufficient."
Despite the admitted difficulty of discerning the meaning of clear and convincing evidence, definitional efforts have been made in Kansas. The results, however, have been less than completely satisfying. Based upon several Kansas cases cited in the Comments, PIK Civ. 4th 102.11 presently states: "To be clear and convincing, evidence should be `clear' in the sense that it is certain, plain to understand, unambiguous, and `convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it." These cited cases, and especially some other decisions of this court, have not only failed to fully clarify, but have also sometimes further muddied, the phrase's meaning.
For example, in Ortega, we acknowledged that clear and convincing evidence is an intermediate standard of proof. 255 Kan. at 528, 874 P.2d 1188 (citing Santosky v. Kramer, 455 U.S. 745, 756-57, 102 S.Ct. 1388, 71 L.Ed.2d 599 [1982]). But in our efforts to clarify past confusion, we held that it is measured by the quality, not quantity, of evidence presented:
"Over the years, this court has discussed clear and convincing evidence in the context of many issues and causes of action, and some confusion exists as to how a jury should be instructed. We hold that clear and convincing evidence is not a quantum of proof but, rather, a quality of proof. A party having the burden of proving a discharge from employment in retaliation for having filed a workers compensation claim must establish that claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature." (Emphasis added.) 255 Kan. at 528, 874 P.2d 1188.
As PIK Civ. 4th 102.11 acknowledges, we then attempted to further define clear and convincing evidence: "It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it." 255 Kan. at 528, 874 P.2d 1188 (citing Chandler, 253 Kan. at 58, 853 P.2d 649).
Four years before Ortega, this court also attempted to provide a clarifying definition of clear and convincing evidence in an area closely related to CINC: parental rights' termination. The value of the guidance in S.M.Q., 247 Kan. at 233, 796 P.2d 543, is questionable, however:
"Clear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedurethat is, it must be more than a mere preponderance but not beyond a reasonable doubt. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence. [Citation omitted.]" (Emphasis added.)
Earlier clarifying efforts from this court have been of similar questionable value. For example, in Newell v. Krause, 239 Kan. 550, 557, 722 P.2d 530 (1986), we held that the common definition of clear and convincing is:
"`"The witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, *600 direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue."'"
We have defined the related phrase, "clear and satisfactory evidence," in equally unhelpful terms:
"`To be clear and satisfactory, evidence should be "clear" in the sense that it is certain, plain to the understanding, and unambiguous, and "satisfactory" in the sense that it is so believable that people of ordinary intelligence, discretion, and caution may have confidence in it.'" Barbara Oil Co., 250 Kan. at 448, 827 P.2d 24.
None of the Kansas appellate courts' numerous efforts to cure this "plague" of imprecision (see Fox, 211 Kan. at 578, 507 P.2d 252) has included references to the United States Supreme Court decision in Colorado v. New Mexico, 467 U.S. 310, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). There, the Court applied the clear and convincing standard to an interstate water dispute and explained:
"Last term, the Court made clear that Colorado's proof would be judged by a clear-and-convincing-evidence standard. [Citation omitted.] In contrast to the ordinary civil case, which typically is judged by a `preponderance of the evidence' standard, we thought a diversion of interstate water should be allowed only if Colorado could place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are `highly probable.' See C. McCormick, Law of Evidence § 320, p. 679 (1954). This would be true, of course, only if the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence New Mexico offered in opposition. See generally McBaine, Burden of Proof: Degrees of Belief, 32 Calif. L.Rev. 242, 251-54 (1944)." (Emphasis added.) 467 U.S. at 316, 104 S.Ct. 2433.
The law review article cited by the Court, McBaine, Burden of Proof: Degrees of Belief, provides that in the cases requiring proof by clear and convincing evidence,
"the courts have decided, not unwisely, that a litigant who asserts certain facts must carry a greater burden than is required ordinarily in civil suits and lesser burden than the state must carry in a criminal prosecution. The burden then should be that the proponent of these issues must establish that the facts, which he asserts, are highly probably true . . . yet not require him to discharge the greater burden of persuading them [the jurors] that they are almost certainly true, true beyond a reasonable doubt, or are certainly true." (Emphasis added.) 32 Calif. L.Rev. 242, 253-54 (1994).
The treatise on evidence cited by the Court currently describes equating clear and convincing with highly probable as a "persuasive suggestion." See 2 McCormick on Evidence § 340, p. 487 (6th ed. 2006) ("It has been persuasively suggested that they [e.g., clear and convincing] could be more simply and intelligibly translated to the jury if they were instructed that they must be persuaded that the truth of the contention is `highly probable.'").
Numerous state jurisdictions have also adopted a "highly probable" definition of clear and convincing evidence. Before Colorado v. New Mexico, the Connecticut Supreme Court in Lopinto v. Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981), stated that "the burden of persuasion is sustained if the evidence `induces in the mind of the trier a reasonable belief that the facts are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.'" Afterward, see, e.g., State v. King, 158 Ariz. 419, 763 P.2d 239 (1988) ("[T]he better instruction would inform a jury that clear and convincing evidence is evidence that makes the existence of the issue propounded `highly probable.'"); State v. Kimball, 145 Idaho 542, 181 P.3d 468 (2008) (sex offender who sought to have his name removed from registry must prove it was highly probable or reasonably certain he was not at risk to reoffend); Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135 (Ind.1988) (punitive damages; "Clear and convincing evidence may be defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt and requires the existence of a fact be highly probable."); *601 Taylor v. Commissioner of Mental Health, 481 A.2d 139, 153-54 (Me.1984) (petitioner required to prove eligibility for requested modified release treatment program by clear and convincing evidence; lower court must find the required factual conclusion to be "highly probable"); State v. Kennedy, 585 N.W.2d 385, 389 (Minn.1998) (whether evidence of a subsequent sexual act is clear and convincing; standard "met when the truth of the facts sought to be admitted is `highly probable'"); State ex rel. Dept. Of Human Services v. Simmons, 342 Or. 76, 149 P.3d 1124 (2006) (termination of parental rights; clear and convincing means the court must find that evidence establishing the truth of the facts asserted is highly probable); Estate of Acuff v. O'Linger, 56 S.W.3d 527, 537 (Tenn.App.2001) (fraud; "[T]he determinative question under this standard of review is whether or not the plaintiffs have carried the burden to establish that it is `highly probable' that the two deeds . . . are forgeries."); Garrison v. CC Builders, Inc., 179 P.3d 867, 877 (Wyo.2008) (fraud; "Evidence is clear and convincing if it persuades the trier of fact that the truth of the contention is highly probable.").
We agree with those courts that have essentially defined clear and convincing evidence as that which is sufficient to establish that the truth of the facts asserted is "highly probable." We particularly agree with the analysis expressed by the Maine Supreme Court in Taylor, 481 A.2d 139, as it described why it was abandoning its earlier rationale contained in Horner v. Flynn, 334 A.2d 194 (Me.1975). The Horner court, like this court in Ortega, had held that the clear and convincing evidence standard "does not identify a level of proof higher than proof by a preponderance, but rather denotes the better quality of evidence that is required to satisfy the preponderance standard." (Emphasis added.) Taylor, 481 A.2d at 153.
The Taylor court began its analysis by echoing the United States Supreme Court in Addington, 441 U.S. at 423, 99 S.Ct. 1804, concerning the function of a standard of proof:
"[A] standard of proof serves to allocate the risk of error [between the litigants] and to instruct the factfinder as to the degree of confidence society expects for a particular decision. To effectuate those purposes, a standard of proof should operate to set the degree to which the factfinder must be persuaded of a particular factual conclusion." 481 A.2d at 154.
The Taylor court then generally described how the Horner approach, like Ortega's, would not serve the function expected under the clear and convincing standard of proof:
"Under the Horner approach the factfinder need only be persuaded that the factual conclusion in dispute is more probable than not. The additional requirement in Horner that the conclusion be supported by high quality evidence cannot adequately satisfy the objectives of the `clear and convincing evidence' standard. A `high quality evidence' requirement does not serve to allocate the risk of error [between the litigants, as described in Addington] and serves only indirectly to instruct the factfinder of the degree of confidence expected for a certain result." 481 A.2d at 154.
The Taylor court then specifically illustrated why the clear and convincing standard of proof could not just represent a quality of the preponderance of the evidence:
"For example, there are many instances in which the evidence on both sides might be deemed of `high quality.' In such instances, Horner permits the party bearing the burden of proof to prevail despite having only a bare preponderance of the evidence. Although the introduction of high quality evidence may well be an important element in meeting the intermediate standard of proof, that alone would not suffice. The factfinder must be persuaded, on the basis of all of the evidence, that the moving party has proved his factual allegations to be true to a high probability. That degree of confidence effectuates the policy purposes for which we have, in this case and others, adopted the `clear and convincing evidence' standard." (Emphasis added.) 481 A.2d at 154.
Per direction from the United States Supreme Court, Kansas, like Maine, recognizes that the clear and convincing standard of *602 proof should apply when "`"particularly important individual interests or rights are at stake."'" Ortega, 255 Kan. at 528, 874 P.2d 1188; see Santosky, 455 U.S. at 756, 102 S.Ct. 1388 ("This Court has mandated an intermediate standard of proof  `clear and convincing evidence'  when the individual interests at stake in a state proceeding are both `particularly important' and `more substantial than mere loss of money.'"). In Santosky, the individual interest at stake was termination of parental rights. In the instant case, the interest is limitation of parental rights through finding one's child to be in need of care. The Santosky court observed that it previously had "deemed this level of certainty [clear and convincing evidence] necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with `a significant deprivation of liberty' or `stigma.'" (Emphasis added.) 455 U.S. at 756, 102 S.Ct. 1388. Like the Maine Supreme Court, we believe that the quantity of evidence, not just the quality of the preponderance of the evidence, best serves this function.
Adopting this definition of clear and convincing evidence  that the factfinder believes that the truth of the facts asserted is highly probable  will also begin to provide, through its simplicity, some much-needed clarity to an evidentiary area that has plagued Kansas, and other jurisdictions, for years. The new definition obviously applies to parental rights termination cases and, as here, to CINC cases, where important individual interests are at stake. Cf. Santosky, 455 U.S. at 758-59, 102 S.Ct. 1388 ("natural parent's `desire for and right to "the companionship, care, custody, and management of his or her children"' is an interest far more precious than any property right"). We see no valid reason why it should not also apply to all cases requiring the factfinder to make a determination based upon clear and convincing evidence. All contrary holdings of this court are disapproved, and the Kansas pattern jury instruction(s) on this issue will require modification.
Issue 2: When an appellate court reviews a trial court's determination which is required to be based upon clear and convincing evidence, it considers whether a rational factfinder could have found the determination to be highly probable.
Having clarified what is meant by clear and convincing evidence, we must now determine what criteria appellate courts should apply when reviewing a trial court's determination under that standard of proof. Mother argues that something more than simply a review for the usual "substantial competent evidence" is required, e.g., "substantial competent evidence of a clear and convincing nature." The State somewhat agrees: the standard is "whether competent evidence of a clear and convincing quality exists to support the [CINC] finding."
We begin our analysis of this question with an acknowledgment of several schools of thought on the applicable appellate standard of review of an issue closely related to CINC: termination of parental rights. While the factfinder's termination decision must be based upon a standard of proof no lower than clear and convincing evidence (see Santosky, 455 U.S. at 769, 102 S.Ct. 1388), according to one commentator, appellate "[d]ecisions range from an insistence on de novo analysis of the trial court's ruling, through some form of heightened review, to deferential or almost non-existent review." Paulsen, Annual Survey of Texas Law, Family Law: Parent and Child, 51 SMU L.Rev. 1087, 1124-26 (1998). According to the commentator, Kansas is in the "almost non-existent review" category, citing S.M.Q., 247 Kan. 231, 796 P.2d 543.
In S.M.Q., this court held that the applicable standard of review for the appellate courts in a termination of parental rights case is not whether the record contains substantial competent evidence of a clear and convincing nature. Rather, the standard is less: "whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that parental rights should be terminated." 247 Kan. at 240, 796 P.2d 543.
This lower standard of review has been followed since then in parental rights termination cases, e.g., In re T.S., 276 Kan. 282, 74 *603 P.3d 1009 (2003); In re C.B., 34 Kan.App.2d 317, 325, 117 P.3d 888 (2005); and in analogous CINC cases, e.g., In re A.F., 38 Kan. App.2d 773, 774, 172 P.3d 66 (2007); In re E.T., 36 Kan.App.2d 56, 74, 137 P.3d 1035 (2006); In re J.J.G., 32 Kan.App.2d 448, 454, 83 P.3d 1264 (2004).
Mother argues, however, that while we cited S.M.Q. in a recent CINC case, we nevertheless appeared to apply a different standard there. She notes that in In re J.D.C., 284 Kan. 155, 170-71, 159 P.3d 974 (2007), this court held:
"On appeal, we examine whether there was substantial competent evidence to support the district court's finding [that child was a CINC]. `Substantial evidence' is such legal and relevant evidence as a reasonable person would accept as sufficient to support a conclusion. In re S.M.Q., 247 Kan. 231, 234, 796 P.2d 543 (1990). An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. 247 Kan. at 234, 796 P.2d 543. In a CINC case, we must, however, be able to discern that the State's evidence was clear and convincing. K.S.A. 38-1555 (now repealed and reenacted as K.S.A.2006 Supp. 38-2250; effective January 1, 2007). We conduct our assessment, viewing the evidence in the light most favorable to the State. [Citation omitted.]
"[W]e have no hesitation in reaching the additional conclusion that the evidence was sufficient to demonstrate J.D.C. was a child in need of care. Although it would have been helpful to have the videotape of the Safe Talk in the record on appeal, the testimony of others regarding J.D.C.'s allegations about E.D. met the clear and convincing standard." (Emphasis added.)
We echoed this language in another CINC case, In re J.A.H., 285 Kan. 375, 172 P.3d 1 (2007). There, we quoted much of the above passage from J.D.C. and stated: "In In re J.D.C., this court held that the evidence was sufficient to demonstrate J.D.C. was a child in need of care and that the evidence met the clear and convincing standard. 284 Kan. at 170-71, 159 P.3d 974. We similarly conclude that the evidence in the instant case is sufficient." (Emphasis added.) 285 Kan. at 388, 172 P.3d 1.
In addition to these two CINC cases, for unexplained reasons, S.M.Q.'s appellate review standard has not been scrupulously followed in other types of cases also reviewing purported clear and convincing determinations. See, e.g., In re Long, 266 Kan. 664, 668, 972 P.2d 773 (1999) (attorney discipline; "clear and convincing evidence supports the hearing panel's findings"); York v. Intrust Bank, N.A., 265 Kan. 271, 296, 962 P.2d 405 (1998) (fraud; evidence substantial and of clear and convincing quality to support findings). Similarly, Carlson v. Burkhart, 271 Kan. 856, 27 P.3d 27 (2001), involved an inverse condemnation action where the court suggested that the landowners' intent to dedicate property needed to be proven by clear and convincing evidence, citing Jackson v. Byrn, 216 Tenn. 537, 393 S.W.2d 137 (1965). This court upheld the district court's findings and said: "There is substantial competent evidence of a clear and convincing nature to support the district court's determination. . . ." 271 Kan. at 863, 27 P.3d 27.
We also observe that although the S.M.Q. court specifically rejected as its standard of review "whether the record contains substantial competent evidence of a clear and convincing nature," it did not explain, or otherwise address, the apparent infirmities of prior opinions of this court which had applied that very standard in other parental rights termination cases. See, e.g., Kerns, 225 Kan. at 753-54, 594 P.2d 187 (district court findings and conclusions that parents be permanently deprived of their parental rights to the minor children "are supported by clear and convincing evidence"); In re Nelson, 216 Kan. 271, 277, 531 P.2d 48 (1975) ("Clear and convincing evidence supported the trial court's findings" of unfitness as a parent.); see also In re Armentrout, 207 Kan. 366, 373, 485 P.2d 183 (1971) (clear and satisfactory evidence to support finding and judgment of trial court terminating mother's parental rights).
In light of past uneven treatment, the time clearly is ripe to revisit the issue of the standard of our review in general, and *604 S.M.Q.'s approach in particular. There, a majority of the Court of Appeals reversed the trial court termination of the mother's rights to her daughter, S.M.Q. While it found some evidence to support the finding, it held that "the termination was not supported by `substantial evidence of a clear and convincing nature.'" 247 Kan. at 231, 796 P.2d 543. According to this court, the controlling issue on appeal was straightforward: "to discern the appropriate standard of appellate review of a trial court's severance of parental rights." 247 Kan. at 232, 796 P.2d 543. This court then held that the Court of Appeals had applied the wrong standard. As mentioned, this court concluded that instead of determining whether the record contains substantial competent evidence of a clear and convincing nature to support the trial court decision, appellate review is limited to simply determining whether there is substantial competent evidence in support.
We first observe that the S.M.Q. approach  requiring the clear and convincing evidence standard of proof at the trial level, but reviewing it as a mere preponderance standard on appeal  has long been criticized. In Beeler v. American Trust Co., 24 Cal.2d 1, 33, 147 P.2d 583 (1944), the dissenting Justice Traynor observed:
"While it rests primarily with the trial court to determine whether the evidence is clear and convincing, . . . [i]n such cases it is the duty of the appellate court in reviewing the evidence to determine, not whether the trier of facts could reasonably conclude that it is more probable that the fact to be proved exists than it does not, as in the ordinary civil case where only a preponderance of the evidence is required, but whether the trier of facts could reasonably conclude that it is highly probable that the fact exists. When it holds that the trial court's finding must be governed by the same test with relation to substantial evidence as ordinarily applies in other civil cases, the rule that the evidence must be clear and convincing becomes meaningless. There is a contradiction in thus destroying the vitality of the rule while affirming its soundness." (Emphasis added.)
See, e.g., In the Matter of C.D., 614 N.E.2d 591, 598 (Ind.App.1993) ("Just as the burden of proof below is substantially enhanced when, as here, constitutional rights and liberties are put at civil risk, the standard of review at the appellate level is correspondingly more stringent"; the review standard is "whether substantial `clear and convincing' evidence was presented below which supports the trial court's judgment.").
We next observe that the cases relied upon by the S.M.Q. court are not supportive of its holding. The S.M.Q. court began by analogizing the termination of parental rights in an adoption proceeding to the termination of parental rights, as there, in an abuse situation. It concluded that the same standard of appellate review therefore applied to both. Unfortunately for this analogy, in such adoptions the trial court was not statutorily required to make a finding based upon clear and convincing evidence. Accordingly, this court's reliance upon such an adoption case, In re Adoption of B.C.S., 245 Kan. 182, 186, 777 P.2d 776 (1989), where the appellate standard of review was merely for substantial competent evidence, is misplaced.
Another case relied upon by the S.M.Q. court as analogous and supporting its conclusion, In re J.G., 12 Kan.App.2d 44, 734 P.2d 1195 (1987), is similarly inapposite. Unlike B.C.S., it was not a termination of parental rights through adoption, but rather termination of such rights because the child was in need of care. The J.G. opinion does state that the standard of review of a parental fitness determination, which must be based upon clear and convincing evidence, is strictly for substantial competent evidence. 12 Kan.App.2d at 51, 734 P.2d 1195. It accurately cites In re Reed, 8 Kan.App.2d 602, 605, 663 P.2d 675 (1983), for this proposition. Reed in turn accurately cited an earlier Court of Appeals opinion for this proposition: In re Hamlett, 2 Kan.App.2d 642, 644, 586 P.2d 277 (1978).
The problem with the analytic structure built with these cases is that its foundation, Hamlett, cites no authority for this proposition. Nor does it conduct any analysis to independently reach this conclusion. While the Hamlett court acknowledges that the *605 burden of proving the child was dependent and neglected was by clear and convincing evidence, it simply concludes that "[o]n appellate review, however, the standard is whether the court below had substantial competent evidence upon which to base its ruling. We hold that it did, and that such finding should not be reversed on appeal." 2 Kan.App.2d at 644, 586 P.2d 277.
The Court of Appeals in S.M.Q. had relied upon the syllabus of In re A.S., 12 Kan. App.2d 594, Syl. ¶ 5, 752 P.2d 705 (1988). The syllabus stated that upon appellate review the record must contain "`substantial competent evidence of a clear and convincing nature to support a finding of parental unfitness.'" Upon review, this court in S.M.Q. held that the Court of Appeals had accurately quoted the A.S. syllabus, but had failed to read it "in the context of that decision." 247 Kan. at 237, 796 P.2d 543. This court accurately pointed out that the body of the A.S. decision had not set forth the appellate standard of review but had merely stated that it need not be repeated. We suggested that the cases cited in the A.S. body controlled: a reference to J.G., which in turn quoted Reed, which in turn quoted Hamlett. The misplaced reliance upon these cases has been discussed above, particularly the problem with the core case: Hamlett.
Ironically, another case cited by Reed  In re Hambelton, 2 Kan.App.2d 68, 71, 574 P.2d 982 (1978)  actually is the opposite of what the S.M.Q. court would seem to desire. Specifically, the Hambelton court acknowledged that the parent's unfitness justifying permanent deprivation of parental rights had to be established by clear and convincing evidence. It then concluded that "[t]he record reveals clear and convincing evidence of parental unfitness on appellant's part." 2 Kan.App.2d at 71, 73, 574 P.2d 982.
Accordingly, our independent review of these cases compels us to doubt the validity of the S.M.Q. court's conclusion that "[t]hese cases hold that the appellate court need only find there is substantial competent evidence within the record, whereas the district court must have found evidence of a clear and convincing nature." 247 Kan. at 238, 796 P.2d 543.
Upon further analysis, we also disagree with the S.M.Q. court's conclusion that "the appellate review standard framed by the Court of Appeals [clear and convincing] does not comply with our statement in In re Nelson, 216 Kan. 271, 276, 531 P.2d 48 (1975), that `[i]t is not our province to usurp the court's fact-finding function and reweigh the total evidence adduced.'" S.M.Q., 247 Kan. at 240, 796 P.2d 543. Specifically, while we agree with the statement in Nelson, we disagree that the Court of Appeals' articulation of the appellate standard violated Nelson. Indeed, after the Nelson court made this statement, it proceeded to hold that "clear and convincing evidence supported the trial court's findings" of parental unfitness, justifying termination of the father's rights. 216 Kan. at 277, 531 P.2d 48. In short, including "clear and convincing evidence" or its equivalent as a part of the appellate standard of review does not constitute usurpation of the trial court's factfinding function or the forbidden reweighing of evidence.
Finally, we acknowledge that the S.M.Q. court did mention several previous contrary opinions of this court involving parental rights termination. However, it did so only to demonstrate the standard of proof at the trial court, not the appellate standard of review also contained in those cases. Accordingly, as mentioned previously, the S.M.Q. court made no attempt to distinguish them or otherwise to explain the discordant appellate standards of review. See 247 Kan. at 23, 795 P.2d 32 (citing, inter alia, Kerns, 225 Kan. at 746, 594 P.2d 187; Nelson, 216 Kan. 271, 531 P.2d 48). Nor did the S.M.Q. court address any of the other types of cases involving clear and convincing evidence that were contrary to its holding on the standard of appellate review. See, e.g., Newell, 239 Kan. at 557, 722 P.2d 530 (fraud; "On review, this court considers only the evidence of the successful party to determine whether it is substantial and whether it is of clear and convincing quality."); Fox, 211 Kan. at 579-80, 507 P.2d 252 (fraud; "We have no hesitancy in finding that the evidence met the clear and convincing standard."); In re Shirk's Estate, 194 Kan. 671, 401 P.2d 279 (1965) (oral contract; "appellate court examines the record *606 and must be satisfied that the findings of the trial court were supported by a quantum of competent and substantial testimony of the quality required by the standard of clear, convincing or satisfactory proof").
In addition to some inconsistency in prior decisions of this court, and the limited analysis by the S.M.Q. court, we consider the approach of a growing number of jurisdictions on this issue. They include, in one form or another, the factfinder's standard of proof by clear and convincing evidence in their standard of appellate review. See In re Nalani C., 199 Cal.App.3d 1017, 1021, 245 Cal.Rptr. 264 (1988) (while the court applies the "substantial evidence" test, the test involves a search of the entire record to determine whether a rational trier of fact could find that termination of parental rights was supported by "clear and convincing" evidence); Blackburn v. Blackburn, 249 Ga. 689, 292 S.E.2d 821, 826 (1982) (the test is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost"); Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135, 137 (Ind.1988) ("In addressing the issue of sufficiency of evidence, we will affirm a judgment of punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence."); Maine Eye Care Associates, P.A. v. Gorman, 942 A.2d 707, 711 (Me.2008) ("In order to affirm a judgment when the standard of proof is by clear and convincing evidence, we must determine that the factfinder could reasonably have been persuaded that the required findings were proved to be highly probable."); In re E.T., ___ A.2d ___, ___, 2008 WL 1029762 (Vt.2008) ("whether the factfinder could reasonably have concluded that the required factual predicate was highly probable").
In light of these considerations, we therefore modify the standard of appellate review articulated in S.M.Q. A more appropriate standard of review for factfinder determinations required to be based upon clear and convincing evidence is one similar to that applied to sufficiency questions in criminal cases. See State v. Henderson, 284 Kan. 267, 296, 160 P.3d 776 (2007) ("`"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt."'"). And certainly, in both criminal and civil cases, the appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. Henderson, 284 Kan. at 297-98, 160 P.3d 776 (criminal); LSF Franchise REO I, LLC v. Emporia Restaurants, Inc., 283 Kan. 13, 19, 152 P.3d 34 (2007) (civil).
In short, when an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, i.e., by clear and convincing evidence, that the child was a CINC. All contrary holdings of this court are disapproved. The primary benefit of this approach is to help resolve the incongruity created by our past approach, i.e., that while the trial court was required to make its determination by a higher standard of proof than preponderance of the evidence  clear and convincing  we nevertheless reviewed that determination by the same lower standard used for mere preponderance-based determinations.
Although this case involves a CINC determination, we see no valid reason why the appellate standard of review articulated here should not also apply to all cases requiring the factfinder to make a determination based upon clear and convincing evidence.
Issue 3: Sufficient evidence was presented to support the trial court's determination that B.D.-Y. was a CINC.
Having clarified what is meant by clear and convincing evidence and having *607 determined what standard appellate courts should apply when reviewing a trial court's determination made under that measure of proof, we turn to the ultimate issue of this appeal. Mother argues that because there was no showing that B.D.-Y.'s injuries were caused through her parents' intent or negligence, the evidence was insufficient to support the trial court's finding that B.D.-Y. was a CINC.
The State responds that the trial court found the parents' explanations for B.D.-Y.'s injuries implausible. Additionally, the court pointed out that Dr. Walsh's testimony was uncontroverted. Finally, the State refers to the trial court's finding that even if Dr. Young's testimony were true, Mother and Father failed to provide appropriate care and control for B.D.-Y.
The trial court found B.D.-Y. was a CINC under K.S.A.2007 Supp. 38-2202(d)(1), (d)(2), and (d)(3). Those provisions state:
"(d) `Child in need of care' means a person less than 18 years of age who:
"(1) Is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian;
"(2) is without the care or control necessary for the child's physical, mental or emotional health;
"(3) has been physically, mentally or emotionally abused or neglected or sexually abused. . . . "
K.S.A.2007 Supp. 38-2202(x) defines "`physical, mental or emotional abuse'" as "the infliction of physical, mental or emotional harm or the causing of a deterioration of a child and may include, but shall not be limited to, maltreatment or exploiting a child to the extent that the child's health or emotional well-being is endangered."
Viewing all of the evidence in the light most favorable to the State, a reasonable factfinder could have found it highly probable that B.D.-Y. was a CINC. It is undisputed that B.D.-Y. was a 2-month-old suffering multiple bruises and at least 12 rib fractures. The parents themselves acknowledge that she was left alone with Father for several hours during each day even though it was known that he suffered from seizures, would pass out, and would not remember what happened during those seizures. The trial court rejected Dr. Young's suggestion that B.D.-Y.'s injuries resulted from a single accident due to one of Father's seizures.
Even if the injuries were all accidentally occurring only during Father's seizures, B.D.-Y. was still essentially left without any caretaker during those times. Moreover, again assuming that the multiple injuries were accidental, after the appearance of the injuries and pain, both parents failed to notice and take any action for 10 to 14 days. B.D.-Y.'s serious, multiple, and late-reported injuries demonstrate it was highly probable that she had been physically abused, that she was without adequate parental care or control, and that she was without the care or control necessary for her physical health. The requirements of K.S.A.2007 Supp. 38-2202(d)(1),(2) and (3) have easily been met. Contrary to Mother's argument, there is no accompanying requirement that a particular parent be found to have caused the injuries through intent, neglect, or otherwise.
Affirmed.