NOT DESIGNATED FOR PUBLICATION

No. 116,964

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF T.W. and L.W.,
Minor Children.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed July 21, 2017. Affirmed.

*BreAnne Hendricks Poe*, of Finch, Covington, and Boyd, of Ottawa, for appellant mother.

*Meredith D. Mazza*, assistant county attorney, and *Stephen Hunting*, county attorney, for appellee.

Before GARDNER, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*:  Mother appeals the district court's order terminating her parental rights to T.W. and L.W., children born to her in 2011 and 2012 respectively. Mother does not contest the district court's finding that she is an unfit parent. Rather, she contends that the district court erred in finding that her unfitness was unlikely to change in the foreseeable future.

The parties are familiar with the evidence presented at the final hearing on the issue of unfitness, so we need not recount all of it here. But we will provide a general overview to provide context for the issue of whether Mother was likely to change.

1

*Facts*

Besides T.W. and L.W., Mother has five other children. Two of those other children are in the custody of the State, and the other three children live with their respective fathers. Mother stipulated that T.W. and L.W. were in need of care in the child in the need of care (CINC) proceedings commenced in Franklin County.

Ten months after the children were found to be in need of care, the court found that Mother was not making progress towards reintegration with her children, so the court changed the objective of the proceedings from reintegration to adoption or permanent guardianships.

Two months later, a full year after the original CINC proceedings, the State moved to terminate Mother's parental rights. At the time of the termination hearing in August 2016, Mother was incarcerated for drug and other convictions. She was scheduled to be released in October 2016. But upon release from prison, she faced the possible termination of her probation in Johnson County in another drug case and the possibility of again being incarcerated to serve the sentence in her Johnson County case.

The evidence presented at the hearing on the State's termination motion established that Mother failed to complete the tasks in the reintegration plan assigned to her. In fact, it appears she did very little to comply with the terms of the plan. She consistently failed to call in for drug tests. She had positive drug tests, including a positive test for methamphetamine while she was on house arrest. She failed to show that she completed a drug and alcohol evaluation. She failed to follow recommendations for substance abuse treatment. In fact, she was discharged from drug treatment for noncompliance. She would not permit walk-throughs of the home. She did not show that she had obtained stable housing and had a stable income for herself and the children. She failed to keep in contact with those supervising her court-ordered reintegration plan. She

2

failed to obtain a parenting evaluation or a mental health evaluation. She did not comply with the terms of her community corrections supervised probation. She failed to visit her children for long periods of time. Mother had been convicted of possession of methamphetamine, misdemeanor theft, and felony theft. She continued to use drugs during the time she was in the county jail. Though granted probation, she continued to use drugs while on probation. Upon completion of her Franklin County sentence, Mother faces probation revocation proceedings in Johnson County which could result in another 8 months of incarceration.

Mother speculated that her Johnson County probation would be reinstated after she was released from prison. She admitted that she was addicted to methamphetamine, and that for a full year during the pendency of this case she had access to free drug treatment, but she failed to complete a treatment program.

Mother testified that she addressed her drug addiction while in prison. She took several classes and obtained her certified logistics technician license along with a forklift license. She worked with Kansas Works to obtain a job after her release, enrolled in college classes, and took classes regarding money management. She hoped to attend Washburn University upon her release. She said she had a plan for housing and rent upon her release.

The district court terminated Mother's parental rights to the children, noting Mother's complete failure to follow through with the reintegration plan, the many children who had been taken from her custody, her criminal history and drug abuse which continued after T.W. and L.W. had been taken from her, her continued drug use after being released from jail, her refusal to complete drug treatment, and the prospect of future additional incarceration based on her Johnson County conviction.

3

The court found that the children had been out of the home for an extended period of time with no effort by Mother to bring the family back together. The court found a statutory presumption of unfitness and no evidence from Mother with which to rebut it. In spite of reasonable efforts of public agencies to rehabilitate the family, Mother continued to be an unfit parent. She displayed a total lack of effort on her part to adjust her circumstances and conduct to meet the needs of her children. The court stated: "I really have a strong suspicion that once you're out of prison if you're left to your own devices you're going to go right back to what you were doing before." The court found no evidence that Mother was going to change in the foreseeable future, and that the termination of her parental rights was in the children's best interests.

*Discussion*

Mother's sole claim on appeal is that the district court erred in failing to consider evidence that her unfitness was likely to change in the foreseeable future. Mother does not challenge the sufficiency of the evidence supporting the court's finding of unfitness.

In considering this claim, we examine the record in the light favoring the State to determine if a rational factfinder could have found it highly probable that Mother's conduct was unlikely to change in the foreseeable future. This standard of high probability is another way of referring to the applicable clear and convincing evidentiary standard. In applying this standard we do not reweigh conflicting evidence, judge the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008); see K.S.A. 2016 Supp. 38-2269(a).

4

*Is Mother Likely to Change in the Foreseeable Future?*

The district court implicitly recognized William Shakespeare's observation in *The Tempest* that "What's past is prologue." As our court somewhat more prosaically held in *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982), we may judicially predict a parent's prospective fitness from the parent's past history.

We need not repeat Mother's many shortcomings described above with regard to her noncompliance with the court's reintegration plan. Given her severe addiction and reluctance to change under even the most dire circumstances, there is a real question whether Mother will *ever* voluntarily deviate from the destructive path she is on. But without speculating on that remote scenario, we must consider the more immediate question whether she is likely to change in the foreseeable future.

Mother argues that her being released from prison within 45 days of the termination hearing makes foreseeable the likelihood of her then mending her maternal ways. She bases this on the various education and pre-employment goals she achieved while in prison, things that move her down the path towards reintegration. But Mother certainly failed to display any such drive to complete her reintegration plan when not in a prison setting, and she fails to take into account the possibility of being delayed another year while she deals with the motion to revoke her probation in Johnson County and the prospect of being incarcerated yet again.

We measure the foreseeable future from the child's perspective. See *In re S.D.*, 41 Kan. App. 2d 780, Syl. ¶ 9, 204 P.3d 1182 (2009). Asking a child to sit still for a minute seems to the child to be a demand not to move for hours. There is never enough time for us as adults, while the clock drags on interminably for the impatient child. Here, to have these young children spend another year in legal limbo without a parent to look to is a burden they should not be required to bear. In *In re M.E.B.*, 29 Kan. App. 2d 687, 690-91,

5

29 P.3d 471 (2001), in the context of a delay in permanency occasioned by a criminal appeal, our court approved of the principle that our process for termination of parental rights is designed to move forward deliberately and with dispatch for the benefit of the children in attaining permanency—whether it be through restoration to a rehabilitated family unit or through termination of the parental rights in conjunction with adoption or some other extended placement.

Mother relies on *In re M.B.*, 39 Kan. App 2d. 31, 176 P.3d 977 (2008), in which the rights of the father were terminated in part because he would not be released from prison until 7 months hence. Mother points out that she is to be released in 45 days. First, she forgets that her freedom may be only temporary due to the pending probation revocation hearing. See *In re M.H.*, 50 Kan. App. 2d 1162, 337 P.3d 711 (2014). Second, holding that 7 months is too long to qualify as the "foreseeable future" does not mean that anything short of that is within the foreseeable future. Third, the issue is not when she will finally be released from prison, but when—if ever—she completes her reintegration tasks and separates herself from the drugs to which she is addicted. These children are entitled to a degree of certainty about their future that history tells us Mother cannot provide.

Without recounting all of Mother's earlier described shortcomings in complying with the court's reintegration plan, we conclude that a rational factfinder could determine that it was highly probable that Mother's parental unfitness was unlikely to change in the foreseeable future. Considering all the evidence, in the light favoring the State, clear and convincing evidence supports the district court's ruling that Mother's unfitness was unlikely to change in the foreseeable future.

Affirmed.

6