NOT DESIGNATED FOR PUBLICATION

No. 119,056

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.C.D. and M.D.D.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed November 30, 2018. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and BRUNS, JJ.

PER CURIAM: In order to terminate a person's parental rights, a district court must have "clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). In making its determination, the district court must consider the nonexclusive factors set out in K.S.A. 2017 Supp. 38-2269(b). The existence of any one factor may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f). The district court must also determine if termination of parental rights is in the child's best interests. K.S.A. 2017 Supp. 38-2269(g)(1).

The district court terminated Father's parental rights. On appeal, Father only appeals two of the court's five statutory determinations regarding unfitness. He alleges

1

that there was insufficient evidence to show that he was unfit due to: (1) his use of intoxicating liquors or narcotic or dangerous drugs which rendered him unable to care for his children, and (2) physical, mental, or emotional abuse or neglect of the children.

The evidence in the record supports the district court's ruling on these two grounds. Evidence showed that Father had a drug problem. Additionally, after his children were taken into custody, but before the termination hearing, Father drank a significant amount of alcohol and was arrested for aggravated battery of Mother and remained in jail for a significant part of the proceedings. Evidence also supported a finding that he abandoned the children and had little contact with them after they were removed from his custody.

Father also argues that the district court erred when it denied his request for a continuance so that Mother could testify at the termination hearing. After balancing the factors used to determine whether an individual's due process rights were violated, we hold that Father's due process rights were not violated.

FACTUAL AND PROCEDURAL HISTORY

In late November 2016, K.C.D. (1-year-old) and M.D.D. (infant) (collectively referred to as the children), were placed in protective custody due to alleged abandonment. The allegation stated that Father and Mother were staying at a family friend's house with the children. The family friend told police that Mother and Father said they did not want their children and left the house around noon. The friend attempted, unsuccessfully, to contact them by phone, but they did not answer. The friend contacted police and the children were taken into protective custody around 5 p.m.

A temporary custody hearing was held a few days later. Father did not appear at the hearing. The court ordered the children to remain in temporary custody of the

2

Department of Children and Families (DCF). The court also adopted the State's proposed orders. Those orders included that Father should: (1) abstain from the use of illegal drugs or alcohol; (2) obtain and maintain full-time employment; (3) obtain and maintain appropriate housing; (4) complete couples counseling, domestic violence classes, and parenting skills classes; and (5) participate in hair follicle testing as scheduled and random urinalysis testing.

An adjudication hearing was held in April 2017. Mother testified that she and Father left the family friend's home after an argument leaving the children at the house. Eventually, Father followed Mother and Mother got in Father's car and they drove away. Mother testified that Father's phone rang while they were in his car but that he did not answer it.

Mother also testified that Father had "laid hands on [her] several times." When asked to elaborate, Mother said that Father punched and kicked her. She also said that Father hit her while she held the children. Mother had a protection from abuse order against Father for an incident where "he beat [her] really bad" a couple of weeks before the adjudication hearing. Mother also testified that Father smoked marijuana and used methamphetamine with her.

Father testified that, at the time of the adjudication hearing, he was incarcerated. Father said that he was selling drugs for a while and that he and Mother were using methamphetamine for "about a month straight" while they stayed at their friend's home. Father explained that on the day the children were taken into protective custody he did not answer the phone because the phone had died. Father admitted that after he and Mother left the kids at the house they consumed drugs. Father also said that he did what he did "on purpose." He explained that he thought his kids would be turned over to the State where they would be safer. Father disputed Mother's testimony that he "laid hands on [her] several times" by saying that he and Mother had only two physical altercations.

3

Finally, Father testified that on the recent night where he was charged with aggravated battery against Mother, they drank shots, a couple of pitchers of beer, and some whiskey.

After the adjudication hearing, the court held that the children were in need of care and ordered them placed in DCF custody. They were to remain in out of home placement.

Four months later, the State moved for a finding of unfitness and termination of parental rights. The motion stated that Father was arrested and charged with aggravated battery of Mother, intimidation of a witness or victim, and driving while suspended. The motion also stated that Father had not completed substance abuse evaluation or parenting classes. Additionally, the State asserted that social workers had no contact with Father since a previous court hearing.

Before the termination hearing, Mother relinquished her parental rights.

The termination hearing occurred in late October 2017. At the hearing, Father requested a continuance until after the preliminary hearing on his aggravated battery charge, which was scheduled to occur within two weeks. The State responded that Father had several opportunities to have his preliminary hearing since his arrest in April 2017 and chose to continue his criminal case. Father denied that the continuances were at his request. Father claimed they were due to Mother's failure to appear and he believed that at the upcoming preliminary hearing she would also not appear and the charges would have to be dismissed or greatly reduced. The district court denied Father's continuance request.

The State presented evidence through Father and Lavana Faine, the social worker assigned to work with the parents on reintegration. Father also testified during his case in chief. A summary of their testimony follows.

4

Father was convicted of aggravated robbery, a person felony, in 2007 when he was 18 years old. See K.S.A. 21-3427. He served over four years in prison for that offense. As a result, he had to register with the local sheriff's office under the Kansas Offender Registration Act (KORA). K.S.A. 2016 Supp. 22-4901. While this case was pending, in November 2016, Father changed jobs without notifying the sheriff's office. See K.S.A. 2016 Supp. 22-4905(h). He was arrested and charged with violating the KORA. He was incarcerated for the violation. He pleaded guilty to that felony offense, and was released from jail in January 2017. See K.S.A. 2016 Supp. 22-4903(c)(1). Then, just two months later, Father was again arrested and charged with aggravated battery, intimidation of a witness, and driving while suspended, related to an altercation with Mother. As a result of the new charges, the State also filed a motion to revoke his probation on the KORA violation. He faced the balance of a 22-month sentence to serve on that charge. At the time of the hearing, Father was still incarcerated. Father believed that if he were to be convicted in his newest criminal case, he could serve between 3 to 15 years in prison.

Father admitted the last time he saw his children in a home visit was in March 2017, prior to his arrest. However, because of his violation of a no-contact order with Mother, he was not able to contact anyone outside the jail except his attorney.

Accordingly, it was impossible for him to talk to his children while incarcerated. When asked about his housing plans after his release from jail, Father advised that he would live in a one-bedroom house with his mom. He believed that he would be able to return to his old job as an electrician and would be able to start work immediately after he was released.

Father claimed the last time he used methamphetamine was in November 2016. He also indicated that he "was pretty well into marijuana pretty much [his] entire life." According to Father, the only drug treatment program he completed was a 28-day inpatient program in 2008.

5

Father testified that before his arrest and incarceration he had completed a mental health evaluation. He admitted he had not completed any sort of drug treatment since 2008. Father did testify that while incarcerated he was participating in a program offered by the Substance Abuse Center of Kansas (SACK). SACK recommended that he should go to inpatient treatment. Additionally, Father testified that he was taking domestic violence classes while in custody.

During his case in chief, Father's attorney indicated that Father wanted to call Mother as a witness, but she had been transported back to the county jail. The attorney said that Father had a single question for Mother which Father hoped would corroborate testimony offered by Faine and himself. The content of the proposed testimony was not proffered to the court. The district court again denied Father's request for a continuance.

The social worker assigned to his case, Faine, testified that, prior to his incarceration, Father missed some visits because of cancellations by the parents. But, since she began working on the case, Father had seven supervised visits with the children. Before Father was incarcerated he would meet with Faine once a month. After Father was incarcerated, the meetings typically occurred after a court hearing. Faine testified that since Father was incarcerated he had not written or called her, nor had he informed her that he was in a SACK program or taking domestic violence classes.

Faine submitted that the children needed permanency in their lives. She explained that to have permanency, they needed stability. She said parents who are sober, have a safe home, and can provide for the children are important. She also said it would be concerning if a parent was in a physically violent relationship or did not have a good relationship with the other parent. Faine testified that Father had not shown that he could meet the emotional or mental needs of the children.

6

Faine also testified that even if Father were released from custody he would need to complete court orders before she recommended reintegration. According to Faine, Father's plan to live in his mother's one-bedroom home would not be an appropriate housing situation although it would not be a reason that she would not recommend reintegrating. Faine explained that Father should obtain housing where it would be just him and the children. Additionally, Father showing some stability in housing, such as a lengthy residency and paying bills, would be important before reintegration could occur.

Faine believed waiting six months to a year after he was released from custody to allow Father to show stability was not appropriate for the children. Father had not provided financially for his children, asked about their welfare, sent letters or cards or gifts, nor had he asked about their medical appointments. Ultimately, Faine recommended that the court terminate Father's parental rights.

After hearing the testimony and considering the exhibits the district court held that Father was unfit and terminated his parental rights. Specifically, the district court found that Father was unfit due to: (1) "[t]he use of intoxicating liquors or narcotics or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the [children]"; (2) "[p]hysical, mental or emotional abuse or neglect or sexual abuse of [the children]"; (3) "[c]onviction of a felony and imprisonment"; (4) "[l]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the [children]"; and (5) "[f]ailure to carry out a reasonable plan approved by the court directed toward the integration of the [children] into the parental home." The district court also found that termination of parental rights was in the children's best interests.

Father appeals the district court's decision.

ANALYSIS

*The district court did not err by determining that Father was an unfit parent and terminating his parental rights.*

On appeal Father argues there was insufficient evidence to support the district court's ruling that he was an unfit parent due to "[t]he use of intoxicating liquors or narcotics or dangerous drugs" and the "[p]hysical, mental, or emotional abuse or neglect or sexual abuse of [the children.]" Father does not contest the remaining three grounds that the district court used to determine that Father was an unfit parent. Those factors included: "[c]onviction of a felony and imprisonment," "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the [children]," and "[f]ailure to carry out a reasonable plan approved by the court directed toward the integration of the [children] into the parental home."

An appellant's failure to address all the alternative grounds for the district court's judgment renders the issues on appeal academic and unassailable. See *Greenwood v. Blackjack Cattle Co.*, 204 Kan. 625, 627-28, 464 P.2d 281 (1970) (when district court's decision is based on alternative grounds, appellant's failure to challenge all grounds on appeal "renders unnecessary" a decision on the issue raised). Likewise, issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018); *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Because three remaining factors are uncontested, even if the district court erred in its holding on the two factors contested by Father it would not warrant reversal. See K.S.A. 2017 Supp. 38-2269(f) (existence of any one of the listed factors *may* be sufficient to warrant termination of parental rights). Nonetheless, we will examine the sufficiency of the evidence to support the two factors raised by Father. We begin with our standard of review.

8

*Standard of Review*

When determining whether a person's parental rights should be terminated, the district court must consider the nonexclusive factors set out in K.S.A. 2017 Supp. 38-2269(b). Any one factor may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f). In reviewing the district court's decision, we consider whether, after examining the evidence in the light most favorable to the State, "we are convinced that a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

When determining whether a person will remain unfit for the foreseeable future the period of time to be considered must be from the child's perspective, not the parent's. See *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). The court can consider a parent's past actions in determining future unfitness. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

*Use of intoxicating liquors, narcotic, or dangerous drugs*

The court may terminate a person's parental rights if the court finds the parent unfit because of the "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2017 Supp. 38-2269(b)(3).

The district court could consider Father's past actions when considering whether he was unfit because of his drug and alcohol use. See *In re Price*, 7 Kan. App. 2d at 483.

9

There was substantial evidence presented to support the district court's finding that Father was unfit due to the use of intoxicating liquors or illegal drugs. Father admitted to selling drugs, using methamphetamine for "about a month straight," using marijuana for most of his life, and using methamphetamine on the day he and Mother left the children at the friend's house. Father also admitted that he was drinking heavily on the night that led to his April 2017 incarceration. Additionally, Father was late in submitting requested urinalysis tests. Admittedly, the tests were negative when he did submit a sample—four days after the sample was requested. As for drug treatment, SACK recommended that Father would need inpatient treatment.

Based on these facts, a rational factfinder could have found it highly probable that Father was an unfit parent due to his use of intoxicating liquors, narcotic, or dangerous drugs. See *In re K.W.*, 45 Kan. App. 2d at 354.

*Physical, mental, or emotional abuse or neglect of a child*

The court may terminate a person's parental rights if the court finds him or her unfit because of "physical, mental or emotional abuse or neglect or sexual abuse of a child." K.S.A. 2017 Supp. 38-2269(b)(4). And as stated above, the district court could consider Father's past actions to reach a decision. See *In re Price*, 7 Kan. App. 2d at 483. There was substantial evidence to support the district court's finding.

Before his children were placed in protective custody, Father left the children at a friend's house and went and used methamphetamine to get high for several hours. Father himself said that he thought the children would be safer with the State. Then after working on reintegration for a while, Father became intoxicated, violated his probation, seriously battered Mother, and was arrested. Since his arrest, Father remained incarcerated and unable to care for his children's physical, mental, or emotional needs. Father claims there was no evidence that the domestic violence alleged by Mother

10

occurred but that is not the case. Mother relayed the details of the attack to a state social worker, who also observed Mother wearing a neck brace, and exhibiting two black eyes and missing teeth. She claimed that the police observed Father beating her in the car and stopped the car. She claimed she was unconscious by the time the police got to the vehicle. Father was arrested and charged a few days later and remained incarcerated throughout the rest of the child in need of care proceedings.

Ample evidence exists to support the district court's conclusion that Father was an unfit parent due to physical, mental, or emotional abuse or neglect of a child.

In sum, we are convinced that a rational factfinder could have found it highly probable, i.e., by clear and convincing evidence, that Father's rights should be terminated. Looking at the evidence using child's time, evidence existed to show that Father was an unfit parent and that his fitness to parent was unlikely to change in the foreseeable future. See K.S.A. 2017 Supp. 38-2269(a).

*The district court did not violate Father's due process rights or abuse its discretion when it denied Father's request for a continuance of the termination hearing.*

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of his or her child. A parent is entitled to due process of law before being deprived of these rights. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008). "Whether an individual's due process rights were violated is a question of law subject to de novo review." *In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 81, 209 P.3d 200 (2009). Father argues that his due process rights were violated because the district court denied his request for a continuance so that he could ask Mother a question at the termination hearing.

11

To review a procedural due process claim, this court must examine the nature and extent of the process due. Due process is flexible and only requires procedural protections as the particular situation demands. 42 Kan. App. 2d at 82.

Father claims that his due process rights were violated when the district court denied his request for a continuance so that Mother could testify at the termination hearing. Mother was subpoenaed to testify but by the time Father's hearing began she had already been transported back to the county jail on a warrant. She relinquished her parental rights to the children. Father's counsel said that Father had one question for Mother which he hoped would corroborate testimony already offered by Faine and Father.

To determine whether due process required the court to continue the hearing so that Mother could testify requires this court to apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The test requires the court to weigh: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used. 424 U.S. at 335.

Under the first factor, Father clearly had an interest in having custody and control over his children, a protected right. See *In re Adoption of A.A.T.*, 287 Kan. at 600-01. At the hearing Father had the right to present his case through witness testimony. See K.S.A. 2017 Supp. 38-2241(b)(2).

Under the second factor, there was little risk of erroneous deprivation of the interest through the procedures used and the probable value of Mother's testimony was low. Father's attorney offered no proffer regarding Mother's expected testimony. On appeal, Father alleges that Mother would have testified that she was not going to testify

12

against him at the criminal preliminary hearing. Father argues that this would show that he would be quickly released from jail. But he does not explain why this would necessitate the dismissal of his case or release from jail. It is not inconceivable to think that the State was not relying solely on Mother's testimony to bring the charges. Mother indicated to a social worker that the police observed Father beating her in the car. Additionally, Father was allowed to testify about his expectation that he would leave jail soon. Even if Father was correct and he did leave jail when he thought he would, that would not mean that he was ready for reintegration. As Faine testified, Father would need to complete court orders before reintegration could occur. That would likely take at least six months.

Finally, under the third factor this court considers the State's interests in the procedures used. The State has an interest in protecting minor children. See *In re J.L.*, 20 Kan. App. 2d 665, 675, 891 P.2d 1125 (1995). Part of protecting the children means ensuring that the children have some stability in their lives, which means cases need to be completed in a timely manner. The Kansas Legislature has enacted statutes which reinforce that need. Proceedings in child in need of care cases "shall be disposed of without unnecessary delay. Continuances shall not be granted unless good cause is shown." K.S.A. 2017 Supp. 38-2246. A request to continue a hearing on a motion to terminate parental rights "shall be granted only if the court finds it is in the best interests of the child." K.S.A. 38-2267(a). In this case, the children had been living in out of home placement since they were abandoned by their parents in November 2016. Father had shown very little progress toward reintegration and had in fact been incarcerated for most of the time. He was still facing 3 to 15 years in prison.

Balancing the factors here shows that the district court did not violate Father's due process rights by denying him the requested continuance. While Father had an interest in maintaining his parental rights, that interest is outweighed by the procedure used and the State's interests. Father had the opportunity to testify about his possible imminent release

13

from jail. Mother's testimony, at best, would only corroborate Father's testimony. At the time of the hearing the children had been in protective custody for nearly a year, a significant portion of their young lives.

In addition, apart from a due process review, this court reviews a district court's denial of a motion for continuance for abuse of discretion. *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). For the same reasons outlined above, the denial of Father's continuance request did not constitute an abuse of discretion. We cannot find that no reasonable person would take the view adopted by the trial court. Moreover, the decision was not based on an error of law or fact. See 302 Kan. at 74. A speedy resolution to the case was in the best interests of the children. See K.S.A. 2017 Supp. 38-2267(a).

Affirmed.